**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF NEW YORK**

---

FELIPE KELLY, individually and on
behalf of all others similarly situated,

Plaintiff,

v.

BROOKLYN EVENTS CENTER, LLC d/b/a
BARCLAYS CENTER,  LEVY PREMIUM
FOODSERVICE LIMITED PARTNERSHIP, and
PROFESSIONAL SPORTS CATERING LLC,

Defendants.

---

CLASS ACTION COMPLAINT

Jury Trial Demanded

Plaintiff Felipe Kelly ("Kelly" or "Plaintiff"), individually and on behalf of all others similarly situated, alleges, upon personal knowledge as to himself and upon information and belief as to other matters, as follows:

## SUMMARY OF THE CLAIMS

1.    This case is about Defendants' Brooklyn Events Center, LLC d/b/a Barclays Center, Levy Premium Foodservice Limited Partnership, and Professional Sports Catering LLC (collectively, "Defendants") flawed and discriminatory criminal history screening policies and practices used to deny employment opportunities to otherwise qualified job applicants.

2.    Mr. Kelly brings this case on his own behalf and that of proposed classes of all others similarly situated against Defendants for violating their rights under the New York City Human Rights Law ("NYCHRL"), N.Y.C. Admin. Code § 8-101 *et seq.*, Article 23-A of the New York State Correction Law ("Correction Law"), the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq.*, and the New York State Fair Credit Reporting Act ("NY FCRA"), N.Y. Gen. Bus. Law § 380 *et seq.*

3.      Mr. Kelly sought employment with Defendants.  He was qualified for the job and given a conditional offer of employment which Defendants subsequently rescinded based on criminal history information revealed on a background check (also known as a "consumer report") obtained by Defendants.

4.      Defendants failed to provide Mr. Kelly with the information they relied upon when denying him employment based on his criminal record, including a copy of his background check and/or a written summary of any conversations Defendants had with Mr. Kelly.  Further, Defendants never asked Mr. Kelly for information regarding the circumstances of his criminal history, for evidence of his rehabilitation or good conduct, or even whether his background check was accurate.

5.      Defendants also failed to provide Mr. Kelly with a "Fair Chance Notice" giving him the required information as to its Article 23-A analysis and then failed to hold his position open for a "reasonable time" of "no less than three business days" to allow him an opportunity to respond to the information used to deny him employment.

6.      Defendants' denial of employment, and related actions, are *per se* violations of the NYCHRL.

7.      Defendants' actions also violate the FCRA and NY FCRA—which are similarly concerned with ensuring that job applicants are provided with crucial information regarding the criminal history information being used to deny them employment and their legal rights and remedies.

8.      Before taking adverse action against Mr. Kelly and other job applicants, Defendants failed to provide them with copies of their consumer reports, a statement of rights

2

under the FCRA, or a copy of Article 23-A of the Correction Law, which violates Section

1681(b)(b)(3) of the FCRA and Section 380-g(d) of the NY FCRA.

9.      Defendants' actions caused concrete injury to Mr. Kelly and other job applicants.

Through their actions, Plaintiff and other job applicants were illegally denied employment.

Further, Defendants' actions prevented them from reviewing their consumer reports and the

bases for Defendants' denials of employment, reviewing their Fair Chance Notices, explaining or

contextualizing their conviction histories, correcting inaccurate or incomplete information,

otherwise challenging their denials of employment, explaining why an analysis of the Article 23-

A factors required that they be hired, and/or learning of their rights and remedies.

10.     Defendants have willfully violated the law.

11.     On behalf of himself and others similarly situated, Plaintiff seeks statutory

damages; exemplary and punitive damages; injunctive and/or declaratory relief, pre-judgment

and post-judgment interest; and reasonable attorneys' fees, costs, and expenses associated with

this action.

## STATUTORY BACKGROUND

12.     "The public policy of [New York] state [and City], as expressed in [the Correction

Law], [is] to encourage the licensure and employment of persons previously convicted of one or

more criminal offenses."  N.Y. Corr. Law § 753(1)(a).

13.     When the Correction Law was enacted in 1976, both the legislature and the

Governor recognized the need to "reverse the long history of employment discrimination

against" people with criminal records by "eliminating many of the obstacles to employment."

Governor's Bill Jacket, 1976, Ch. 931 Memorandum of Senator Ralph J. Marino &

Assemblyman Stanley Fink in Support of S. 4222-C and A. 5393-C.

14.     As articulated in the NYCHRL, "there is no greater danger to the health, morals, safety and welfare of the city and its inhabitants than the existence of groups prejudiced against one another and antagonistic to each other because of their actual or perceived differences, including those based on . . . conviction or arrest record."  N.Y.C. Admin. Code § 8-101.

15.     Overbroad and/or arbitrary bans on hiring because of conviction histories undermine and violate the City's clearly articulated policy.

16.     Such acts of discrimination "menace the institutions and foundation of a free democratic state."   N.Y.C. Admin. Code § 8-101.

17.     The use of these arbitrary pre-employment bans also results in discrimination on the basis of race, ethnicity, color, and national origin because it imports the racial and ethnic disparities in the criminal justice system into the employment application process.

18.     For these, among other reasons, the NYCHRL forbid employers from denying jobs, or aiding and abetting the denial of employment, simply because a job applicant has a criminal record.  Instead, employers must engage in an individualized evaluation of each of the factors outlined in Article 23-A of the Correction Law.

19.     Through the passing of the Fair Chance Act, an amendment to the NYCHRL, New York City recognized the need to add greater protections to the NYCHRL by requiring that companies not just allege that they reviewed all appropriate Article 23-A factors before denial, but to affirmatively provide candidates with a written version of the Article 23-A analysis conducted (*i.e.* the Fair Chance Notice), a copy of their criminal record and a reasonable time to respond to such information and engage in an interactive process with the employer (while also holding the job open for the applicant).  *See* N.Y.C. Admin. Code § 8-107(11-a)(b)(i)-(iii).

20.     In turn, the FCRA was enacted "to ensure that consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and respect for the consumers' right to privacy," FCRA § 1681(a)(4), by operating "in a manner which is fair and equitable to the consumer, with regard to the confidentiality, accuracy, relevancy" of the consumer information they disseminate, FCRA § 1681(b).

21.     Congress was particularly concerned about the use of background reports in the employment context, and therefore defined the term "consumer reports" to explicitly include background reports procured for employment purposes.  *See* 15 U.S.C. § 1681a(d)(1)(B). Congress enacted Section 1681b(b)(3) so that applicants would be provided with a copy of their consumer report and a statement of their FCRA rights *before* any adverse action was taken against them.  *See* 15 U.S.C. § 1681b(b)(3).

22.     Likewise, the New York State Assembly enacted the relevant provision of the NY FRCA (i.e. Section 380-g(d)) to "ensure that employers and prospective employees are informed about the mandates of Article 23-A of the correction law" because that information "will help to avoid illegal discrimination against persons with a criminal conviction."  L. 2008, c. 465, § 2, eff. Feb. 1, 2009.

## JURISDICTION AND VENUE

23.     This Court has jurisdiction over Plaintiff's claims pursuant to 15 U.S.C. § 1681p, which permits claims under the FCRA to be brought in any "court of competent jurisdiction" and 28 U.S.C. 1331.  This Court also has jurisdiction over Plaintiff's NYCHRL and NY FCRA claims pursuant to 28 U.S.C. § 1367 (supplemental jurisdiction).

24.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1) and (2) because Defendant Barclays is headquartered and resides in this District and because a

substantial part of the events and omissions giving rise to the claims alleged herein occurred in this District.

26. Contemporaneously with the filing of this Complaint, Plaintiff will mail a copy of the Complaint to the New York City Commission of Human Rights and the Office of the Corporation Counsel of the City of New York, thereby satisfying the notice requirements of Section 8-502 of the New York City Administrative Code.

## PARTIES

**Plaintiff Felipe Kelly**

26. Mr. Kelly and the proposed Class Members he seeks to represent are "consumers" as defined by the FCRA and NY FCRA and are each a "person" within the meaning of the NYCHRL.

27. Mr. Kelly has a criminal history.

28. Mr. Kelly is a Black and Latino resident of Bronx County, New York.

**Defendants**

29. Defendant Brooklyn Events Center, LLC owns and operates the Barclays Center ("Barclays"). Barclays is a Delaware limited liability company that maintains its headquarters in Brooklyn, New York.

30. Defendant Levy Premium Foodservice Limited Partnership a/k/a Levy Restaurants ("Levy Premium") is a limited partnership organized under the laws of Illinois and maintains its headquarters in Chicago, Illinois.

31. Defendant Professional Sports Catering LLC ("PSC") is a corporation organized under the laws of Illinois and maintains its headquarters in Chicago, Illinois. PSC is a subsidiary of Levy Premium.

32.     At all relevant times, Defendants have each been a "person" using "consumer reports" of Plaintiff and proposed Class Members for "employment purposes" and have taken "adverse action" against Plaintiff and similarly situated applicants, as defined by the FCRA and NY FCRA.

33.     At all relevant times, Defendants have been aware of the requirements of the FCRA and NY FCRA, and yet have disregarded those requirements.

34.     At all relevant times, Defendants have been employers and persons as defined by the NYCHRL, and private employers as defined by the Correction Law.

## STATEMENT OF FACTS

### Plaintiff Kelly's Facts

35.     In approximately August 2016, Mr. Kelly applied to work for a restaurant operated by Levy Premium and/or Professional Sports Catering LLC at Barclays.

36.     As part of the application process, Mr. Kelly interviewed in approximately early August with an employee of Barclays.

37.     At the end of the interview, the Barclays employee told Mr. Kelly that he would be hired if he passed a drug test and a background check (which would be provided to him after he passed the drug test).  The employee also told him that he was qualified for the position based on his previous work history.

38.     After passing the drug test, Defendants sent Mr. Kelly an August 17, 2016 email which stated: "Please find the Levy Restaurants background check form attached."

39.     Defendants attached to that email a 10-page disclosure and authorization document.

40.     On August 21, 2016, Defendants sent a follow-up email stating that it was a "mass email" to "make sure that we cover everyone with what is needed[,]" again attaching the 10-page disclosure and authorization document.

41.     Because Defendants only sent the 10-page disclosure and authorization document to Mr. Kelly via email, and he could not enter the information online (the document was not text-fillable), Mr. Kelly was forced to go to a store and pay to print out the 10-page pdf file.

42.     Upon reading the 10-page disclosure and authorization document, Mr. Kelly was confused about its purpose.

43.     Nonetheless, Kelly returned the form to Defendants.

44.     Upon information and belief after Defendants ran the background check on Mr. Kelly, a representative of Defendants told Mr. Kelly to expect a call with the date and time for his orientation.

45.     However, Mr. Kelly did not hear back about the position until he called Barclays on September 16, 2016, and was told that he was being denied employment because of his criminal history.

46.     Mr. Kelly never received a copy of his consumer report or any inquiry conducted on him, a statement of his FCRA rights, a timely copy of Article 23-A of the Correction Law, or a Fair Chance Notice documenting any specific Article 23-A analysis conducted by Defendants.

47.     Because Defendants never provided Mr. Kelly with crucial information regarding his denial of employment, Mr. Kelly was unaware of what information was being reported on him, unable to review the information reported about him for accuracy and completeness, contextualize even true information, review Defendants' arguments (if any) for why they believed his conviction barred him from employment, and/or explain why he was nonetheless

entitled to employment, including any evidence of rehabilitation and good conduct.

48.     Defendants also never asked Mr. Kelly whether the consumer report was accurate.

49.     During the entire relevant period, Mr. Kelly resided at the same address known to Defendants.

**Factual Allegations Common to All Class Members**

***The NYCHRL***

50.     The NYCHRL states that no employer may "deny employment to any person" based on a criminal conviction "when such denial or adverse action is in violation of the provisions of article twenty-three-a of the correction law."  N.Y.C. Admin. Code § 8-107(10).

51.     Article 23-A of the Correction Law prohibits an employer from denying employment to any person by virtue of their criminal record unless the employer can meet its burden of demonstrating one of two exceptions:

>     (1)     there is a direct relationship between one or more of the previous criminal offenses and the specific license or employment sought or held by the individual; or
>
>     (2)     the issuance or continuation of the license or the granting or continuation of the employment would involve an unreasonable risk to property or to the safety or welfare of specific individuals or the general public.

N.Y. Correct. Law § 752.

52.     Article 23-A of the Correction Law further requires that before taking any adverse action on the basis of a criminal record, the employer must consider all the following factors:

>     (a) The public policy of this state, as expressed in this act, to encourage the licensure and employment of persons previously convicted of one or more criminal offenses.
>
>     (b) The specific duties and responsibilities necessarily related to the license or employment sought or held by the person.

(c) The bearing, if any, the criminal offense or offenses for which the person was previously convicted will have on his fitness or ability to perform one or more such duties or responsibilities.

(d) The time which has elapsed since the occurrence of the criminal offense or offenses.

(e) The age of the person at the time of occurrence of the criminal offense or offenses.

(f) The seriousness of the offense or offenses.

(f) Any information produced by the person, or produced on his behalf, in regard to his rehabilitation and good conduct.

(g) The legitimate interest of the public agency or private employer in protecting property, and the safety and welfare of specific individuals or the general public.

N.Y. Correct. Law § 753.

53.     The NYCHRL has additional protections against discrimination, known as Fair Chance Act protections, which not only restrict the ability of companies to ask about criminal records until after an employment offer is made, but additionally specify the process companies must follow when denying a candidate due to their past record.  Specifically:

(b) After extending an applicant a conditional offer of employment, an employer . . . may inquire about the applicant's arrest or conviction record if before taking any adverse employment action based on such inquiry, the employer, employment agency or agent thereof:

(i) provides a written copy of the inquiry to the applicant in a manner to be determined by the commission;

(ii) performs an analysis of the applicant under article twenty-three-a of the correction law and provides a written copy of such analysis to the applicant in a manner determined by the commission, which shall include but not be limited to supporting documents that formed the basis for an adverse action based on such analysis and the employer's . . . reasons for taking any adverse action against such applicant; and

(iii) after giving the applicant the inquiry and analysis in writing pursuant to subparagraphs (i) and (ii) of this paragraph, allow the applicant a reasonable time to respond, which shall be no less than three business days and during this time, holds the position open for the applicant.

N.Y.C. Admin Code § 8-107(11-a)(b).

54.     "The applicant must be able to see and challenge the same criminal history information relied on by the employer."  NYC Commission on Human Rights Legal Enforcement Guidance on the Fair Chance Act, Local Law No. 63 (2015) at 8.

55.     Further, "employers who rely on oral information must provide a written summary of their conversation.  The summary must contain the same information the employer relied on in reaching its determination, and it should identity [sic] whether that information was provided by the applicant."  *Id.*

56.     It is impossible for an employer to conduct the legally required evaluation of all Article 23-A factors without first engaging in a conversation with the prospective candidate before making an employment determination.  *See* N.Y. Correct. Law § 753.

57.     Moreover, it also is an "unlawful discriminatory practice for any person to aid, abet, incite, compel or coerce the doing of any of the acts forbidden" under those laws "or to attempt to do so."  N.Y.C. Admin Code § 8-107(6).

58.     Defendants' denial of employment to job applicants based on information contained in consumer reports (and/or aiding and abetting that denial), without following the requirements of the NYCHRL, including the Fair Chance Act, is a per se violation of the NYCHRL.

59.     Defendants have acted consciously in breaching their known duties and depriving Plaintiff and other job applicants of their rights under the NYCHRL.

60.     At a minimum, Defendants' conduct has been reckless in failing to make an appropriate inquiry to ascertain its legal obligations, especially given the extensive press surrounding the passage of the Fair Chance Act.

61.     The ability to find employment is an essential aspect of reentering society for people with criminal histories.  Recidivism declines when those individuals have viable employment prospects and other stabilizing resources in their communities.  Defendants' policy of discriminating against individuals with criminal records, and aiding and abetting those acts, frustrates such public policy objectives.

***The Fair Credit Reporting Act***

62.     The FCRA was enacted in 1970.  Through its passage, Congress required that consumer reports be "fair and equitable to the consumer" and protect a "consumer's right to privacy" through "adopt[ing] reasonable procedures" to ensure "the confidentiality, accuracy, relevancy, and proper utilization" of information contained within consumer reports.  15 U.S.C. §§ 1681(a)(4)-(b).

63.     Congress requires that "before taking any adverse action based in whole or in part on [a consumer report]," the employer taking the adverse action must provide "the consumer to whom the report relates" with:

    (i)     a copy of the report; and

    (ii)    a description in writing of the rights of the consumer under this subchapter, as prescribed by the [Consumer Financial Protection] Bureau under section 1681g(c)(3)[.]

15 U.S.C. § 1681b(b)(3)(A)(i) and (ii).

64.     The FCRA defines adverse action as both "a denial of employment or any other decision for employment purposes that adversely affects any current or prospective employee,"

and "an action taken or determination that is . . . adverse to the interests of the consumer."  15 U.S.C. § 1681a(k)(1)(B)(ii) and (iv).

65.     Upon information and belief, Defendants have routinely and systematically failed to provide Plaintiff and other job applicants with their consumer report and a summary of their rights under the FCRA before taking adverse actions against them.

66.     In Congress's judgment, an employer's failure to provide a consumer with his or her consumer report and a summary of his or her rights under the FCRA are both harms sufficient to establish Article III standing.

67.     Without notice that a consumer report is going to be used to take adverse action against them, job applicants are hindered in their ability to preserve their privacy, provide context for their criminal histories, or correct errors or other problems with the report.

68.     Defendants' failure to provide this information also created the risk that Plaintiff and other job applicants would not discovery inaccuracies in their reports and the risk that they would fail to seek to vindicate their right under the FCRA because they would not know of those rights.

69.     Defendants have acted willfully in violating the FCRA.  Defendants  knew or should have known their obligations under the FCRA.  These obligations are well-established by the plain language of the FCRA, in the promulgations and opinion letters of the Federal Trade Commission, and in longstanding case law.  Further, Defendants are required to certify to the consumer reporting agency that it will comply with the FCRA's stand-alone disclosure and authorization requirements.  *See* 15 U.S.C. § 1681b(b)(1)(A).

70.     Despite Defendants' awareness of their legal obligations, they have acted recklessly and willfully in breaching their known duties and depriving Plaintiff and other job

applicants of their rights under the FCRA.

***The NY FCRA***

71.     The NY FCRA requires that:

When a consumer reporting agency provides a consumer report that contains criminal conviction information, permitted by paragraph one of subdivision (a) of section three hundred eighty-j of this article, to a user, the person, firm, corporation or other entity requesting such report shall provide the subject of such report a printed or electronic copy of article twenty-three-A of the correction law governing the licensure and employment of persons previously convicted of one or more criminal offenses.

N.Y. Gen. Bus. Law § 380-g(d).

72.     "The public policy of [New York] state, as expressed in [its Correction Law], [is] to encourage the licensure and employment of persons previously convicted of one or more criminal offenses."  N.Y. Corr. Law § 753(1)(a).

73.     Upon information and belief, Defendants have routinely and systematically failed to provide Plaintiff and other job applicants with a copy of Article 23-A of the Correction Law when a CRA provides a consumer report.

74.     This has caused Plaintiff and other job applicants concrete harm because it has denied them an opportunity to learn of their rights under Article 23-A of the Correction Law and created the risk of future harm.

75.     For example, as discussed above, under the Correction Law Defendants cannot deny employment to an individual "when such finding is based upon the fact that the individual has previously been convicted of one or more criminal offenses, unless" Defendants show "a direct relationship" between the conviction(s) and the job or "an unreasonable risk to property or to the safety or welfare of specific individuals or the general public."  N.Y. Corr. Law § 752.

76.     Instead, Defendants must consider all eight factors laid out in Section 753 of the Correction Law and whether the individual has a certificate of relief from disabilities or a

certificate of good conduct.  N.Y. Corr. Law § 753.

77.     In turn, Section 754 of the Correction law allows an individual "previously convicted of one or more criminal offenses" to request a written explanation for the employer's denial of employment, which the employer is required to provide within 30 days of the request—providing applicants with crucial information as to the basis for the job denial.  N.Y. Corr. Law § 754.

78.     Defendants' failure to provide Plaintiff and other job applicants with a copy of Article 23-A of the Correction law denied them information about their legal right to be free from discrimination and remedies for that discrimination once it had occurred.

79.     Defendants' failure to provide this information also created the risk that Plaintiff and other job applicants would fail to seek to vindicate their right to be free from discrimination—either from Defendants' denial of employment or the denial of employment by another employer.

80.     Given that the time for an individual to bring a claim against Defendants through the New York City Commission on Human Rights ("NYCCHR") is only one year, *see* N.Y.C. Admin. Code § 8-109(e) (stating that commission lacks jurisdiction over complaints "filed more than one year after the alleged unlawful discriminatory practice or act of discriminatory harassment or violence . . . occurred"); N.Y. Corr. Law § 755(2) (explaining that claims can be brought against private employers, *inter alia*, through NYCCHR), many putative class members have had their choice of venues diminished through Defendants' actions, causing further concrete harm.

81.     Defendants' violation of the NY FCRA frustrates New York's public policy to increase the employment of persons with criminal convictions.  *See* N.Y. Corr. Law § 753(1)(a).

82.     The harms suffered by Plaintiff and other job applicants are the precise harms that the New York Legislature enacted section 380-g to prevent. *See* L. 2008, c. 465, § 2, eff. Feb. 1, 2009 (enactment of provision was to "ensure that employers and prospective employees are informed about the mandates of Article 23-A of the correction law" because that information "will help to avoid illegal discrimination against persons with a criminal conviction").

83.     Defendants have acted willfully in violating the requirements of the NY FCRA. Defendants knew or should have known about their obligations under the NY FCRA.  These obligations are well-established by the longstanding and plain language of the NY FCRA.

84.     Despite Defendants' awareness of their legal obligations, they have acted recklessly and willfully in breaching their known duties and depriving Plaintiff and other job applicants of their rights under the FCRA.

## CLASS ACTION ALLEGATIONS

85.     Plaintiff Kelly brings this case as a proposed Class action pursuant to Federal Rule of Civil Procedure ("Rule") 23 on behalf of himself and four classes of persons (collectively, the "Classes").

86.     Plaintiff asserts the First Cause of Action against Defendants on behalf of the "NYCHRL Criminal History Discrimination Class" defined as follows:

> **NYCHRL Criminal History Discrimination Class**:  All individuals who, during the applicable three year statute of limitations period, were denied employment based in whole or in part on criminal offense information contained in a consumer report without Defendants having performed a complete New York Correction Law Article 23-A analysis, as required by the NYCHRL.

87.     Plaintiff asserts the Second Cause of Action against Defendants on behalf of the "NYCHRL Fair Chance Act Class" defined as follows:

> **NYCHRL Fair Chance Act Class:** All individuals who, since October 27, 2015, were denied employment based in whole or in part on criminal offense information without Defendants having first providing a written copy of the

inquiry, the Fair Chance Notice, and/or the opportunity respond to the inquiry and analysis, as required by the NYCHRL.

88.     Plaintiff asserts the Third Cause of Action against Defendants on behalf of the

"FCRA Consumer Report Class" defined as follows:

> **FCRA Consumer Report Class:** All individuals who, during the applicable five year statute of limitations period, were subjected to an adverse action by Defendants at least in part because of information in their consumer reports without first being provided with a copy of their consumer report and/or a statement of their rights under the FCRA.

89.     Plaintiff asserts the Fourth Cause of Action against Defendants on behalf of the

"NY FCRA Class" defined as follows:

> **NY FCRA Class**: All individuals who, during the applicable two year statute of limitations period, had consumer reports requested about them by Defendants and were not provided with a copy of article twenty-three-A of the correction law.

90.     The members of the NYCHRL Criminal History Discrimination Class, NYCHRL

Fair Chance Act Class, FCRA Consumer Report Class, and NY FCRA Class are collectively

referred to as "Class Members."

91.     Plaintiff reserves the right to amend the definition of above-defined classes based

on discovery or legal developments.

92.     The Class Members identified herein are so numerous that joinder of all members

is impracticable.  Defendants are large employers.  Nonetheless, the number of job applicants

harmed by Defendants violations of the law are far greater than feasibly could be addressed

through joinder.  The precise number is uniquely within Defendants' possession, and Class

Members may be notified of the pendency of this action by published and/or mailed notice.

93.     There are questions of law and fact common to Class Members, and these

questions predominate over any questions affecting only individual members.  Common legal

and factual questions include, among others:

(a)     whether Defendants violated the NYCHRL and the Correction law when denying employment to Plaintiff and the Criminal History Discrimination Class and the NYCHRL Fair Chance Act Class;

(b)     whether Defendants violated the FCRA by failing to provide Plaintiff and the FCRA Consumer Report Class with a copy of their consumer report before taking adverse action against them in violation of 15 U.S.C. § 1681b(b)(3)(A)(i) and whether Defendants violated the FCRA by failing to provide Plaintiff and the FCRA Consumer Report Class with a written description of their rights under the FCRA before taking adverse action against them in violation of 15 U.S.C. § 1681b(b)(3)(A)(ii);

(c)     whether Defendants violated the NY FCRA by failing to provide Plaintiff and the NY FCRA Class with a copy of Article 23-A of the Correction Law, in violation of N.Y. Gen. Bus. Law § 380-g(d);

(d)     whether Defendants' actions caused informational injury to Plaintiff and Class Members, and whether Defendants' actions violated the privacy of Plaintiff and Class Members;

(e)     whether Defendants were willful in their noncompliance with the requirements of the FCRA and NY FCRA;

(f)     whether statutory damages, compensatory damages, exemplary damages and punitive damages for Class Members are warranted; and

(g)     whether a declaratory judgement and/or injunctive relief is warranted regarding Defendants' policies and practices.

94.     Plaintiff is a member of the classes he seeks to represent.  Defendants took adverse action against Plaintiff without proper consideration of the factors laid out in the Correction Law.  Defendants failed to provided Plaintiff a copy of his consumer reports or information used to deny him employment, a Fair Chance Notice documenting the Article 23-A analysis, a written summary of his rights under the FCRA, or a copy of Article 23-A of the Correction Law, and failed to provide him with time to respond to that information (including holding the position open during that time).

95.     Plaintiff's claims are typical of the claims of the classes he seeks to represent. Upon information and belief, it is Defendants' standard practice to take adverse actions against

applicants without properly considering the factors laid out in the Correction Law, following the procedures laid out in the NYCHRL, including as amended by the Fair Chance Act, or the notice requirements of the FCRA and NY FCRA.  Plaintiff is entitled to relief under the same causes of action as other Class Members.

96.     Plaintiff will fairly and adequately represent and protect the interests of Class Members because his interests coincide with, and are not antagonistic to, the interests of the Class Members they seek to represent.  Plaintiff has retained Counsel who are competent and experienced in complex class actions, including litigation pertaining to criminal background checks, the NYCHRL and the Correction Law, the FCRA and NY FCRA, other employment litigation, and the intersection thereof.  There is no conflict between Plaintiff and the Class Members.

97.     Class certification is appropriate under Rule 23(b)(2) for the NYCHRL Criminal History Discrimination Class and the NYCHRL Fair Chance Act Class because Defendants have acted and/or refused to act on grounds generally applicable to the Class, making appropriate declaratory and injunctive relief with respect to Plaintiff and the Class as a whole (or as to a specific subset of issues).  The Class Members are entitled to declaratory and injunctive relief to end Defendants' common, uniform, unfair, and discriminatory policies and practices.

98.     Class certification is also appropriate under Rule 23(b)(3) for the NYCHRL Criminal History Discrimination Class and the NYCHRL Fair Chance Act Class because common questions of fact and law predominate over any questions affecting only individual Class Members.  For example, Defendants have maintained a common policy of taking adverse action without first properly considering the mandatory factors laid out in the Correction Law or otherwise following relevant provisions of the NYCHRL (including the Fair Chance Act).

Moreover, a class action is superior to other available methods for the fair and efficient adjudication of this litigation.  Class Members have been damaged and are entitled to recovery as a result of Defendants' uniform policies and practices.

99.     Class certification is appropriate under Rule 23(b)(3) for the FCRA Consumer Report Class because common questions of fact and law predominate over any questions affecting only individual Class Members.  For example, Defendants have maintained a common policy of taking adverse action without first providing applicants with copies of their consumer reports and/or a written description of their rights under the FCRA.  Moreover, a class action is superior to other available methods for the fair and efficient adjudication of this litigation.  Class Members have been damaged and are entitled to recovery as a result of Defendants' uniform policies and practices.  Because Defendants have maintained a common policy of failing to properly inform Class Members of their rights under the FCRA before taking adverse actions, many Class Members are likely unaware that their rights have been violated.

100.     Class certification is appropriate under Rule 23(b)(3) for the NY FCRA Class because common questions of fact and law predominate over any questions affecting only individual Class Members.  For example, Defendants have maintained a common policy of obtaining consumer reports from individuals without providing them with a copy of Article 23-A of the Correction Law.  Moreover, a class action is superior to other available methods for the fair and efficient adjudication of this litigation.  Class Members have been damaged and are entitled to recovery as a result of Defendants' uniform policies and practices.  Because Defendants have maintained a common policy of failing to properly inform Class Members of their rights under the NY FCRA, many Class Members are likely unaware that their rights have been violated.

101.    Questions as to the propriety and scope of declaratory and injunctive relief regarding Defendants' conduct will be common to Class Members.  Moreover, the amount of each Class Member's individual claim is small compared to the expense and burden of individual prosecution of this litigation.  The FCRA has statutorily specified damages, which Class Members will prove at trial are warranted, that will render calculation of damages for Class Members straightforward.  The propriety and amount of exemplary and punitive damages are based on Defendants' conduct, making these issues common to Class Members.

## CAUSES OF ACTION

### FIRST CLAIM FOR RELIEF
**Defendants' Discriminatory Denials of Employment
and/or Aiding and Abetting[1] the Denials of Employment
(N.Y.C. Admin. Code. § 8-101 *et seq.*, Brought by Plaintiff on Behalf of
Himself and the NYCHRL Criminal History Discrimination Class)**

102.    Plaintiff, on behalf of himself and the NYCHRL Criminal History Discrimination Class, incorporates the preceding paragraphs as alleged above.

103.    Defendants denied employment to Plaintiff and the NYCHRL Criminal History Discrimination Class based in whole or in part on the criminal history information contained within their consumer reports and/or aided and abetted those denials of employment.

104.    Before denying employment to Plaintiff and the NYCHRL Criminal History Discrimination Class (and/or aiding and abetting the denial of employment), Defendants failed to conduct a proper inquiry into the factors outlined in Article 23-A of the Correction Law, in violation of N.Y.C. Admin. Code § 8-107(10).

---

[1]    Throughout this Complaint, the use of "aiding" and "abetting" is intended to convey the full range of actions covered by Section 8-107(6) of the New York City Administrative Code.

105.     As a result of Defendants actions, Plaintiff and the NYCHRL Criminal History Discrimination Class have been deprived of their rights and have lost employment opportunities, earnings and other employment benefits.

106.     In addition to damages, Plaintiff and the NYCHRL Criminal History Discrimination Class seek injunctive and declaratory relief to correct Defendants' discriminatory policies and practices.

### SECOND CLAIM FOR RELIEF
**Defendants' Failure to Follow the Requirements of the Fair Chance Act
and/or Aiding and Abetting that Failure
(NYCHRL § 8-107(11-a)(b)(i)-(iii), Brought by Plaintiff on Behalf of
Himself and the NYCHRL Fair Chance Act Class)**

107.     Plaintiff, on behalf of himself and the NYCHRL Fair Chance Act Class, incorporates the preceding paragraphs as alleged above.

108.     Defendants denied employment to Plaintiff and the NYCHRL Fair Chance Act Class based in whole or in part upon an inquiry conducted on applicants on the basis of their criminal histories and/or aided and abetted those denials of employment.

109.     Before taking adverse employment action based on such information (and/or aiding and abetting the denial of employment), Defendants failed to (and/or aided and abetted the failure to):

    a. provide a written copy of any inquiry into the applicants' arrest or conviction records in violation of N.Y.C. Admin Code § 8-107(11-a)(b)(i);

    b. provide a written copy of any Article 23-A analyses conducted on applicants in violation of N.Y.C. Admin Code § 8-107(11-a)(b)(ii); and

    c. allow applicants a reasonable amount of time, not less than three days, to respond to the inquiries and analyses, and hold the job open during that time, in violation of N.Y.C. Admin Code § 8-107(11-a)(b)(iii).

110.     Each of these failures by Defendants establishes a separate cause of action and injured Plaintiff and the NYCHRL Fair Chance Act Class.

111.     For example, as a result of Defendants' actions, Plaintiff and the NYCHRL Fair Chance Act Class were unaware of what information was being reported on them, unable to review the information reported about them for accuracy and completeness, contextualize even true information, review Defendants' arguments (if any) for why they believed convictions barred the NYCHRL Fair Chance Act class from employment, and/or explain why they were nonetheless entitled to employment, including any evidence of rehabilitation and good conduct.

112.     As a result of Defendants actions, Plaintiff and the NYCHRL Fair Chance Act Class have lost employment opportunities, earnings and other employment benefits.

113.     In addition to damages, Plaintiff and the NYCHRL Fair Chance Act Class seek injunctive and declaratory relief to correct Defendants' discriminatory policies and practices.

<u>**THIRD CLAIM FOR RELIEF**</u>
**Defendants' Failure to Provide Consumer Reports and Notices Before Adverse Actions (15 U.S.C. § 1681b(b)(3)(A), Brought by Plaintiff on Behalf of Himself and the FCRA Consumer Report Class)**

114.     Plaintiff, on behalf of himself and the FCRA Consumer Report Class, incorporates the preceding paragraphs as alleged above.

115.     Defendants' violated the FCRA by taking adverse employment actions against Plaintiff and the FCRA Consumer Report Class based in whole or in part on the information contained within their consumer reports.

116.     Before taking these adverse employment actions, Defendants' failed to provide Plaintiff and the FCRA Consumer Report Class with a copy of their consumer reports and a reasonable amount of time to respond.

117.    Before taking these adverse employment actions, Defendants' failed to provide Plaintiff and the FCRA Consumer Report Class with a written description of their rights under the FCRA.

118.    These failures are each separate violations of the FCRA.

119.    Defendants' policy caused concrete injury (including the risk of harm) to Plaintiff and the FCRA Consumer Report Class, including because they could not:

    (a) evaluate information contained in the consumer reports to ensure accuracy;

    (b) challenge and correct that information;

    (c) explain the circumstances surrounding that information (even if accurate);

    (d) explain why information reported should not preclude employment;

    (e) explain why information that was different on the consumer report than the application should not preclude employment; and

    (f) learn of their rights and opportunities under the FCRA, including the opportunity to bring suit under the FCRA.

120.    Defendants acted willfully and in knowing or reckless disregard of its obligations and the rights of Plaintiff and the FCRA Consumer Report Class.

121.    Defendants' willful conduct is reflected by, among other things, the fact that it violated a clear statutory mandate set forth in 15 U.S.C. § 1681b(b)(3)(A).

122.    Defendants' willful conduct is still further reflected by the following:

    (a) The FCRA was enacted in 1970, and Defendants have had years to become compliant, the plain meaning of which is clear;

    (b) Defendants' conduct is inconsistent with the FTC's longstanding regulatory guidance, judicial interpretation, and the plain language of the statute;

    (c) Defendants repeatedly and routinely took adverse action based in whole or in part on information contained in a consumer report before providing

24

consumers with a copy of the consumer report or FCRA rights; and

(d) By adopting such a policy, Defendants voluntarily ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless.

123.     As a result of Defendants' actions, Plaintiff and the FCRA Consumer Report Class have been deprived of their consumer rights, prevented from timely and effectively contesting the adverse action, and have had their privacy invaded.

124.     Defendants' willful conduct makes them liable for statutory damages, punitive damages, and attorneys' fees and costs, in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

**FOURTH CLAIM FOR RELIEF**
**Defendants' Failure to Provide Copy of Article 23-a**
**(N.Y. Gen. Bus. Law § 380-g(d), Brought by Plaintiff on Behalf of**
**Himself and the NY FCRA Class)**

125.     Plaintiff, on behalf of himself and the NY FCRA Class, incorporates the preceding paragraphs as alleged above.

126.     Defendants violated the NY FCRA by procuring consumer reports from Plaintiff and the NY FCRA Class without providing them with copies of Article 23-A of the Correction Law.

127.     Defendants' policy caused concrete injury (including the risk of harm) to Plaintiff and the NY FCRA Class, including because they could not learn of their rights and opportunities under the NY FCRA.

128.     Defendants acted willfully and in knowing or reckless disregard of their obligations and the rights of Plaintiff and the NY FCRA Class.

129.     Defendants' willful conduct is reflected by, among other things, the fact that it violated a clear statutory mandate set forth in N.Y. Gen. Bus. Law § 380-g(d).

130.    Defendants' willful conduct is still further reflected by the following:

(a) Defendants have had years to become compliant with the NY FCRA, the plain meaning of which is clear;

(b) The legislative history of the NY FCRA stresses the importance of providing a timely copy of Article 23-A;

(c) Defendants repeatedly and routinely failed to provide individuals with copies of Article 23-A as required by the NY FCRA; and

(d) By adopting such a policy, Defendants voluntarily ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless.

131.    As a result of Defendants' actions, Plaintiff and the NY FCRA Class have been deprived of their consumer rights, prevented from timely and effectively contesting the adverse action.

132.    Defendants' willful and/or negligent conduct makes them liable for actual damages, punitive damages, and attorneys' fees and costs, in an amount to be determined by the Court pursuant to N.Y. Gen. Bus. Law § 380-l and N.Y. Gen. Bus. Law § 380-m.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff and Class Members pray for relief as follows:

(a)    Certification of the case as a class action on behalf of the proposed classes;

(b)    Designation of Plaintiff Kelly as representative of Class Members;

(c)    Designation of Plaintiff's counsel of record as Class Counsel;

(d)    Injunctive and/or declaratory relief to correct Defendants' discriminatory policies and practices;

(e)    An award of compensatory and/or punitive damages for violations of the NYCHRL;

(f)    An award of all actual and/or statutory damages awardable for violations of the FCRA and NY FCRA including punitive damages for each violation found to be willful;

26

(g)     An award of costs incurred herein, including reasonable attorneys' fees to the extent allowable by law;

(h)     Pre-judgment and post-judgment interest, as provided by law;

(i)      Payment of a reasonable service award to Plaintiff Kelly, in recognition of the services he has rendered and will continue to render to Class Members, and the risks he has taken and will take; and

(j)      Such other and further legal and equitable relief as this Court deems necessary, just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury in this action.

Dated:  New York, New York
        August 4, 2017

Respectfully submitted,

By:   _/s/ Ossai Miazad_____

**OUTTEN & GOLDEN LLP**
Ossai Miazad
Lewis M. Steel
Christopher M. McNerney
685 Third Avenue, 25th Floor
New York, New York 10017
Telephone:  (212) 245-1000
Facsimile:  (646) 509-2060

**YOUTH REPRESENT**
Michael C. Pope
Eric Eingold
11 Park Place, Suite 1512
New York, NY 10007
Telephone: (646) 759-8080
Facsimile: (646) 217-3097

*Attorneys for Plaintiff and the Putative Classes*