# Exhibit A

## SETTLEMENT AGREEMENT AND RELEASE

This Settlement Agreement and Release (the "Agreement") is entered into by and between Felipe Kelly ("Plaintiff"), individually and on behalf of a class he seeks to represent, and Brooklyn Events Center, LLC d/b/a Barclays Center, Levy Premium Foodservice Limited Partnership ("Levy") and Professional Sports Catering LLC (collectively, "Levy" or "Defendants," together with Plaintiff, the "Parties").

I.     RECITALS AND BACKGROUND

WHEREAS, Plaintiff filed a class action in the United States District Court for the Eastern District of New York, alleging that Defendants violated the New York City Human Rights Law ("NYCHRL"), N.Y.C. Admin. Code § 8-101 *et seq.*, Article 23-A of the New York State Correction Law ("Correction Law"), the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq.*, and the New York State Fair Credit Reporting Act ("NY FCRA"), N.Y. Gen. Bus. Law § 380 *et seq.*, by using criminal history records in making hiring determinations in a manner that discriminated against applicants with criminal records seeking non-exempt food service operations positions at the Barclays Center operated by Levy ("the Litigation").

WHEREAS, the Parties have exchanged data and documents and conducted several informal discovery meetings;

WHEREAS, on April 23, 2018, the Parties engaged the services of Hunter R. Hughes, a mediator with experience in the mediation of complex class actions, including employment discrimination litigation;

WHEREAS, following the mediation, the Parties exchanged multiple drafts of a proposed Memorandum of Understanding ("MOU") which contemplated utilizing the services of an Industrial Organizational Psychologist ("IO") to review Levy's criminal background check policies and practices;

WHEREAS, the Parties then consulted with an IO in order to craft language regarding the appropriate scope of the Consultant's role;

WHEREAS, the Parties executed a MOU and reached a proposed comprehensive settlement to resolve Plaintiff's claims, which resulted in this Agreement;

WHEREAS, the Parties have agreed to a comprehensive class-based settlement, including the appointment of a well-qualified IO to serve as a consultant, and review and propose as deemed necessary modifications to Levy's current background check policies and practices in post-conditional-offer hiring decisions at the Barclays Center, and the IO has agreed to undertake this project;

WHEREAS, Defendants deny any and all liability or damages to any individual, group, or entity with respect to the alleged facts or causes of action asserted by Plaintiff;

WHEREAS, without admitting or conceding any liability or damages whatsoever, Defendants have agreed to settle Plaintiff's claims on the terms and conditions set forth in this Agreement, to avoid the burden, expense, and uncertainty in litigating these claims;

1

48466063v.1

WHEREAS, Plaintiff's Counsel has analyzed and evaluated the merits of the claims made against Defendants, and the impact of this Agreement on Plaintiff and members of the proposed class, and based upon Plaintiff's Counsel's analysis and evaluation of a number of factors, and recognizing the substantial risks of class litigation, including the possibility that if not settled now, future litigation might not result in any recovery, or might result in a recovery that is less favorable and that would not occur for several years, as well as recognizing that many of the nonmonetary elements of this Agreement would have been difficult to achieve through litigation, Plaintiff's Counsel is satisfied that the terms and conditions of this Agreement are fair, reasonable, and adequate and that this Agreement is in the best interest of Plaintiff and the members of the class;

WHEREAS, the attorneys' fees that Plaintiff's Counsel seek are based on the time and expenses they expended on this matter, and will incur going forward;

NOW THEREFORE, in consideration of the mutual covenants and promises set forth in this Agreement, as well as the good and valuable consideration provided for herein, the Parties hereto agree to a full and complete settlement of Plaintiff's claims on the following terms and conditions:

**1.   DEFINITIONS**

The defined terms set forth in this Agreement have the meanings ascribed to them below.

**1.1   Acceptance Period.** "Acceptance Period" means the sixty (60) day notice period, beginning from the date of the mailing of the Settlement Notice and Claim Form, during which a Class Member may timely complete and submit a Claim Form to participate as a Tier Two or Three Class Member.

**1.2   Agreement.** "Agreement" or "Settlement" means this Settlement Agreement and Release.

**1.3   Allocation Formula.** "Allocation Formula" means the Two Hundred and Fifty Dollars and No/100 Cents ($250.00) to each Tier One Class Member, One Thousand Nine Hundred and Fifty Dollars and No/100 Cents ($1,950.00) to each Tier Two Class Member, and Two Thousand Three Hundred and Fifty Dollars and No/100 Cents ($2,350.00) to each Tier Three Class Member that Levy will pay to Class Members.

**1.4   Approved Background Check Policy.** "Approved Background Check Policy" means the criminal background check policy in place at Levy after either: (i) the Consultant reviews the policy and determines that no modifications are necessary as set forth in Section 3.3(E)(1); or (ii) Levy has adopted the recommendations of the Consultant and/or Arbitrator as set forth in Section 3.3(E)(5).

**1.5   Arbitrator.** "Arbitrator" means Hunter R. Hughes or his replacement (to be mutually determined by the Parties).

**1.6   Claim Bar Date.** "Claim Bar Date" means the last day of the sixty (60) day Acceptance Period in which any Class Member may timely complete and submit a Claim Form.

**1.7   Claim Form.** "Claim Form" means the Claim Form, as approved by the Court, that a Class

  Member may timely complete and submit to participate as a Tier Two or Three Class Member.

1.8 **Class Counsel or Plaintiff's Counsel.**  "Class Counsel" and "Plaintiff's Counsel" shall mean Outten & Golden LLP ("O&G") and Youth Represent ("YR").

1.9 **Class Period.**  The "Class Period" is defined as the period from August 4, 2014 through August 15, 2018.

1.10 **Class Members.** The "Class Members" are defined as applicants who applied for a position with Levy at the Barclays Center during the Class Period, and: (i) were otherwise eligible for employment (e.g., did not fail their pre-employment drug tests or have an invalid Social Security number that would have precluded Levy from procuring a background report on them); (ii) were identified by Levy as having a background report showing a criminal history (i.e., either a conviction or a pending charge) through background reports procured from a consumer reporting agency retained by Levy; and (iii) who were not hired by Levy either because of unintentional administrative error or on the basis of their criminal history.

1.11 **Class Member Release.**  The "Class Member Release" means the release by which each Settlement Class Member shall release Defendants from liability, as set forth in Section 5 below.

1.12 **Consultant.**  The "Consultant" is IO Dr. Toni Locklear of APTMetrics, or her replacement (to be mutually determined by the Parties), tasked with serving as an independent consultant to Levy to review and propose any necessary modifications to Levy's guidelines for the use of criminal history records in post-conditional offer hiring decisions at the Barclays Center.  The Consultant has experience conducting professional job analyses and reviewing selection criteria, including experience in the criminal background check context.

1.13 **Court or District Court.**  "Court" or "District Court" means the United States District Court for the Eastern District of New York.

1.14 **Days.**  "Days" means calendar days (excluding federal holidays).

1.15 **Defendants or Levy.**  "Defendants" or "Levy" shall mean Brooklyn Events Center, LLC d/b/a Barclays Center, Levy Premium Foodservice Limited Partnership, and Professional Sports Catering LLC, and their predecessors, successors, parents, subsidiaries, affiliates, current and former employees, insurers, and divisions.

1.16 **Effective Date.**  "Effective Date" of the Settlement shall mean the latest of the following dates: (a) the expiration of time for appeal of the Court Order finally approving the Settlement; or (b) if there is an appeal of the Court's decision granting final approval, the day after all appeals are finally resolved in favor of final approval.

**1.17**   **Excess Funds**. "Excess Funds" shall mean any additional money from uncashed checks to Settlement Class Members that exists after Defendants pay for the costs of the Settlement Administrator.

**1.18**   **Fairness Hearing.** "Fairness Hearing" means the hearing before the Court relating to the Motion for Final Approval.

**1.19**   **Final Approval Order.** "Final Approval Order" means the Order entered by the Court after the Fairness Hearing, approving the terms and conditions of this Agreement.

**1.20**   **Named Plaintiff.** "Named Plaintiff" means Felipe Kelly, his representatives, heirs, administrators, executors, beneficiaries, conservators, attorneys, and assigns.

**1.21**   **Notice or Notices.** "Notice" or "Notices" means the Court-approved Notice of Proposed Settlement of Class Action Lawsuit.

**1.22**   **Objector.** "Objector" means an individual who properly files an objection to this Agreement, but does not include any individual who opts out of this Agreement.

**1.23**   **Opt out Statement.** "Opt out Statement" is a written signed statement that an individual Class Member has decided to opt out of this settlement and not be included in this Agreement.

**1.24**   **Parties.** "Parties" are the Named Plaintiff and Defendants.

**1.25**   **Preliminary Approval Order.** "Preliminary Approval Order" means the Order entered by the Court preliminarily approving the terms and conditions of this Agreement, and directing the manner and timing of providing Notices to the Class Members.

**1.26**   **Settlement Class Members.** "Settlement Class Members" are Class Members who do not submit a valid Opt out Statement.

**1.27**   **Service Award**.   "Service Award" means Court-approved compensation awarded to Named Plaintiff for his role in this case.

**1.28**   **Settlement Administrator.** The "Settlement Administrator" means the company jointly selected and retained by the Parties to administer notice of settlement and distribution of settlement monies.

**1.29**   **Tier One Class Member.** "Tier One Class Members" are Settlement Class Members who either were: (i) not eligible for hire because they are disqualified under the Approved Background Check Policy; or (ii) did not timely file a Claim Form with the Settlement Administrator seeking compensation/a position pursuant to the claims process outlined in the Agreement.

**1.30**   **Tier Two Class Member.** "Tier Two Class Members" are Settlement Class Members who file a Claim Form seeking the job for which they originally applied with Levy at the Barclays Center and whose original background reports under the Approved Background

4

   Check Policy do not disqualify them for hire.

**1.31**   **Tier Three Class Member**. "Tier Three Class Members" are Settlement Class Members who file a Claim Form stating that they are not seeking employment with Levy at the Barclays Center and whose original background reports under the Approved Background Check Policy do not disqualify them for hire.

**2.**   **INITIAL PROCEDURAL ISSUES**

**2.1**   **Binding Agreement.** This Agreement is a binding agreement and contains all material agreed-upon terms for the Parties to seek a full and final settlement of the Litigation.

**2.2**   **Retention and Responsibilities of the Settlement Administrator.** The Settlement Administrator will be jointly selected by the Parties to distribute the Notices and Claim Forms, to distribute the Service Award, attorneys' fees and costs, and settlement payments, and to otherwise administer the settlement. The Settlement Administrator's fees and costs of administering the settlement shall be borne by Levy. The Settlement Administrator will be responsible for distributing the Notices and Claim Forms to Class Members in accordance with the Court's Preliminary Approval Order, maintaining a toll-free phone number and website to answer Class Members' questions, collecting and verifying responses, distributing the Service Award, and distributing settlement payments.

   (A)   The Parties will have equal access to the Settlement Administrator. The Settlement Administrator will provide regular reports to Class Counsel and Defendants' Counsel at least once every week regarding the status of distributing Notices and Claim Forms to Class Members, the claims administration process, the names of Class Members who file Tier Two and Three Claim Forms, how many Class Members have filed Tier Two and Three Claim Forms, and which Class Members, if any, object to and/or opt-out of the Settlement.

   (B)   Levy agrees to reasonably cooperate with the Settlement Administrator to facilitate Defendants' obligations in this Agreement, including to provide information to assist the Settlement Administrator in locating Class Members, as specified in Section 4.1 below.

**2.3**   **Dismissal With Prejudice**. Within fifteen (15) days following the Parties' execution of this Agreement, Class Counsel will file in the United States District Court for the Eastern District of New York a Stipulation of Dismissal dismissing with prejudice Brooklyn Events Center, LLC d/b/a Barclays Center and Professional Sports Catering LLC from the Litigation.

**2.4**   **Preliminary Approval Motion.**

   (A)   Within thirty (30) days following the Parties' execution of this Agreement, Class Counsel will file in the United States District Court for the Eastern District of New York, a Motion for Preliminary Settlement Approval, memorandum of law in support thereof, proposed Notice to Class Members, Claim Form, and Proposed Order ("Preliminary Approval Motion"), which is consistent with the Agreement.

        Class Counsel will provide Defendants' Counsel the opportunity to review the memorandum of law five (5) days prior to filing. The Preliminary Approval Motion will seek a settlement class pursuant to Federal Rule of Civil Procedure ("Rule") 23(e) and 23(b)(2) and (b)(3), with an opt out right.

(B)     The Preliminary Approval Motion also will seek the setting of date(s) for individuals to opt out of this Agreement or provide objections to this Agreement, which date will be forty-five (45) days from the delivery of Notice to the Class Members, and for a Fairness Hearing for final approval of the Settlement before the Court at the earliest practicable date.

(C)     In the Preliminary Approval Motion, Class Counsel will seek to certify a Rule 23(b)(3) settlement class, with an opt out right, and inform the Court of the intended process to obtain a Final Approval Order that will, among other things, seek to: (1) approve the Settlement as fair, adequate, and reasonable; (2) incorporate the terms of the Release, as described herein; (3) dismiss the Litigation with prejudice; (4) award Class Counsel their fees and costs; and (5) pay a Service Award to the Named Plaintiff.

(D)     If the Court denies the Preliminary Approval Motion, the Parties will work together in good faith to revise the Agreement to address the Court's concerns, seek reconsideration, and/or appeal the Court's decision. If these efforts are ultimately unsuccessful or a settlement class is not certified, the Litigation will resume as if no settlement had been attempted, and this Settlement will be null and void, with no force and effect.

(E)     The Parties will work together, diligently and in good faith, regarding all aspects of the settlement approval process, including to expeditiously obtain a Preliminary Approval Order and Final Approval Order.

## 3. SETTLEMENT TERMS

### 3.1 Settlement Amount.

(A)     This is an un-capped claims-made settlement in which Levy agrees to pay Settlement Class Members pursuant to the following Allocation Formula: Two Hundred and Fifty Dollars and No/100 Cents ($250.00) to each Tier One Class Member, and for individuals who submit Claim Forms, One Thousand Nine Hundred and Fifty Dollars and No/100 Cents ($1,950.00) to each Tier Two Class Member, and Two Thousand Three Hundred and Fifty Dollars and No/100 Cents ($2,350.00) to each Tier Three Class Member. The total amount owed to Settlement Class Members will be transferred to the Settlement Administrator as escrow agent, within fourteen (14) days of the Effective Date.

(B)     Levy agrees to transfer Five Thousand Dollars and No/100 Cents ($5,000.00) to the Settlement Administrator, within fourteen (14) days of the Effective Date of this Settlement. This amount shall be paid to Named Plaintiff as part of any Court-approved Service Award as soon as practicable thereafter, but in any event no later

than ten (10) days after Defendants' transfer the Service Award to the Settlement Administrator.

(C) Class Counsel will seek Court approval of an award of One Hundred Sixty-Five Thousand Dollars and No/100 Cents ($165,000.00), for the payment of attorneys' fees and costs. Levy agrees to transfer One Hundred Sixty-Five Thousand Dollars and No/100 Cents ($165,000.00) to the Settlement Administrator, within fourteen (14) days of the Effective Date of this Settlement, which shall be wired to Plaintiff's Counsel as soon as practicable thereafter, but no later than ten (10) days after Levy's transfer of the attorneys' fees and costs to the Settlement Administrator.

(D) The entire cost of implementing the injunctive/programmatic relief provisions of this Agreement shall be paid by Levy. This commitment includes, but is not limited to, the funding of the work of the Consultant, her staff, and other experts and consultants as reasonably required.

(E) Levy shall pay the Settlement Administrator's fees and costs.

(F) Levy shall pay the full fees and costs for services rendered by Hunter R. Hughes related to the April 23, 2018 mediation, as well as any future costs and fees related to the provision of Hunter R. Hughes' (or a mutually agreed upon replacement's) services as Arbitrator as defined in this Settlement Agreement.

(G) Any uncashed checks shall be used to cover the costs of the settlement administration. If Excess Funds exist, the Settlement Administrator shall distribute the Excess Funds to Getting Out and Staying Out (GOSO). Notwithstanding this provision, Levy shall pay $5,000 to Getting Out and Staying Out, only if the Excess Funds are less than that amount.

**3.2    Class Definition.**

(A) The Settlement Class is defined as all applicants who applied for a position with Levy at the Barclays Center during the Class Period, and: (i) were otherwise eligible for employment (*e.g.*, did not fail their pre-employment drug tests or have an invalid Social Security number that would have precluded Levy from procuring a background report on them); (ii) were identified by Levy as having a background report showing criminal history (*i.e.*, either a conviction or a pending charge) through background reports procured from a consumer reporter agency retained by Levy; and (iii) who were not hired by Levy either because of unintentional administrative error or on the basis of their criminal history, with the following exception:

(1) The Settlement Class will exclude all individuals that Levy can establish were, or would have been, denied employment for reasons other than their criminal history records (*e.g.* failed drug test, SSN name-match screen, or similar reasons). To the extent Levy believes that such individuals are on the class list, Levy shall notify Class Counsel and provide the basis for their

    belief that an exclusion is proper.  Should the Parties dispute the propriety of a proposed exclusion, it shall be resolved by the Consultant.

**3.3**  **Programmatic Terms and Injunctive Relief.**

 (A) **Selection.**  The Parties have jointly selected the Consultant to review Levy's current background check policies and practices at the Barclays Center in light of the NYCHRL, the Correction Law, FCRA, NY FCRA, and Title VII of the Civil Rights Act of 1964 ("Title VII").

 (B) **Engagement and Compensation of the Consultant.**  The Parties agree that within ten (10) days of execution of the Settlement Agreement, Levy will enter into a consulting agreement with the Consultant.

 (C) **Purpose.**  The Consultant shall review Levy's current background check policies and practices at the Barclays Center in light of the NYCHRL, the Correction Law, FCRA, NY FCRA, and Title VII.

 (D) **Access.**  As part of this review, Levy shall promptly provide to the Consultant all relevant and accessible information relating to Levy's current adjudication guidelines and practices relating to the use of criminal history background checks in hiring, and will work cooperatively to provide additional information, if any, requested by the Consultant.  Should there be delay in Levy's provision of the information to the Consultant, the Parties will consent to reasonable extensions of the time for the Consultant to provide a written determination—as requested by the Consultant.

 (E) **Modifications to Levy's Policies.**  Within forty-five (45) days, the Consultant will provide written proposed modifications to the Parties, if any, consistent with the Consultant's review of Levy's current background check policies and practices and the applicable laws referenced in Section 3.3(C).

   (1) Should the Consultant find, in her professional opinion as an IO, that Levy's current background check policies and practices at the Barclays Center are consistent with the applicable laws referenced in Section 3.3(C), then the Consultant will not propose modifications.

   (2) If Levy agrees to make all of the modifications to its policies and practices at the Barclays Center per the recommendations of the Consultant, then the Parties will be advised by the Consultant that Levy has complied with the Consultant's recommendations and that no further steps need to be taken by Levy.  Levy shall implement all agreed to changes within thirty (30) days of receipt of the Consultant's written recommendations or, if more time is needed, specify the date by when the changes will be implemented.

   (3) If, however, Levy does not agree to all such recommendations, then it must inform the Consultant and Plaintiff's Counsel of its exact areas of disagreement within fourteen (14) days of receipt of the Consultant's

8

     written recommendations. Plaintiff's Counsel and Defendants' Counsel shall then meet and confer in an effort to resolve any differences between the Parties regarding the Consultant's recommendations. For areas where Levy agrees with the Consultant's recommendations, it shall implement all agreed to changes within thirty (30) days of receipt of the Consultant's written recommendation or, if more time is needed, specify the date by which the changes will be implemented.

   (4) If the meet and confer is unsuccessful, the Parties shall then submit their respective final positions in writing to the Arbitrator, or another agreed upon arbitrator, who will consider and approve the position of one of the Parties.

   (5) Levy shall then adopt the recommendations of the Consultant to which it agreed along with any additional recommendations approved by the Arbitrator, or another agreed upon arbitrator.

(F) **Enforcement and Reporting.** For the twelve (12) month period subsequent to the completion of the process set forth in Section 3.3(E), Levy shall keep records reflecting its compliance with its policies and practices at the Barclays Center as established through this process. At the end of the twelve (12) month period, Levy shall provide documentation, the scope of which will be agreed upon with the Consultant in advance, to the Consultant to demonstrate its compliance with its obligations under this provision.

   (1) **Compliance.** If, after reviewing the documentation, the Consultant determines that Levy has complied with its obligations, then the Consultant will report that finding to Levy and Plaintiff's Counsel. After the Consultant reports that Levy is compliant, the Consultant's engagement under this Agreement will come to an end and Levy will be under no further obligation to provide information or documentation to the Consultant or otherwise seek the Consultant's approval or input regarding its background check policies and procedures at Barclays Center.

   (2) **Noncompliance.** If after reviewing the documentation, the Consultant determines that Levy has substantively failed to comply with its obligations, then such substantive noncompliance shall be reported to Levy and Plaintiff's Counsel and the Parties shall meet and confer on what further remedial action, if any, will be sought going forward. If the meet and confer is unsuccessful, the Parties shall submit their respective final positions in writing to the Arbitrator, who will consider and approve the position of one of the Parties.

(G) **Replacement of Consultant or Arbitrator.** The Parties understand that the Consultant and the Arbitrator have agreed to provide services consistent with this Agreement and are aware of the need for expeditious resolution of all matters covered herein. If, however, the Consultant must withdraw due to illness or other reason, Levy and Plaintiff agree to work together to replace the Consultant with a qualified IO who can promptly perform the services set forth in this Agreement. If Levy and Plaintiff cannot agree on a replacement Consultant, they can each make

9

written submissions to the Arbitrator requesting that the Arbitrator select the replacement Consultant. Similarly, if the Arbitrator is forced to withdraw, the Parties agree to work together to replace the Arbitrator with a qualified person who can promptly perform the services set forth in this Agreement.

**3.4**   **Class Member Relief.**

(A)   **Tier One Class Members.**

(1)   **Scope.** Tier One will consist of Class Members who either, (i) are not eligible for hire because they are disqualified under the Approved Background Check Policy; or (ii) did not timely file a claim with the Settlement Administrator seeking compensation/a position as provided herein.

(2)   **Disqualification.** To be disqualified under Levy's Approved Background Check Policy, the determination must be approved by the Consultant. To this end, within twenty (20) days of the Consultant's determination that no modifications are necessary as set forth in Section 3.3(E)(1) or adoption of the recommendations of the Consultant and/or Arbitrator as set forth in Section 3.3(E)(5), Defendants' Counsel will provide to the Consultant a list of all applicants whom they believe are Tier One Class Members based on the nature of their criminal history, and this list will include each applicant's reported criminal history and the job to which he/she applied. With respect to Class Members whose original background reports reflect pending criminal charges, where the crime that has been charged would not be disqualifying (even if the individual were convicted), the fact that a final disposition is pending/unknown will be deemed irrelevant. However, where the pending charge is one that if adjudicated as a conviction would be disqualifying, then the Parties will develop a procedure for determining if the Class Member's criminal history is disqualifying and approval of the same by the Consultant.

(3)   **Monetary Award.** A payment of Two Hundred and Fifty Dollars and No/100 Cents ($250.00) will be made to Tier One Class Members. Tier One Class Members who were not eligible for hire because they are disqualified under the Approved Background Check Policy are not required to file a claim with the Settlement Administrator seeking compensation.

(B)   **Tier Two Class Members.**

(1)   **Scope.** Tier Two will consist of Class Members who state on their Claim Forms that they are seeking the job for which they originally applied with Levy at the Barclays Center and whose original consumer reports under the Approved Background Check Policy do not disqualify them for hire.

(2)   **Instatement.** Levy shall seek – and Tier Two Class Members shall agree to Levy obtaining – a current background report in connection with their potential employment by Levy at the Barclays Center. If the Class

10

        Member's new background report is not disqualifying under the Approved Background Check Policy, then that individual Class Member will be hired for the position for which the individual had previously been made a conditional offer of employment ("Original Position").  If the Original Position is not available or no longer exists, the Class Member will be hired for a substantially similar position if Levy identifies a substantially similar position within thirty (30) days of the determination by Levy that an Original Position for the Class Member is not available or no longer exists.  Any disqualification because of a Class Member's criminal record as reflected by his/her current background report must be approved by the Consultant.  If a Class Member is disqualified for hire because of his/her criminal record as reflected by his/her current background report, then the Class Member will not receive a job offer.

    (3)    **Monetary Award.**  A payment of One Thousand Nine Hundred and Fifty Dollars and No/100 Cents ($1,950.00) will be made to Tier Two Class Members, whether or not the individual qualifies for instatement.

(C)    **Tier Three Class Members.**

    (1)    **Scope.**  Tier Three will consist of Class Members who state on their Claim Forms that they are not seeking employment with Levy at the Barclays Center and whose original background reports under the Approved Background Check Policy do not disqualify them for hire.

    (2)    **Monetary Award.**  A payment of Two Thousand Three Hundred and Fifty Dollars and No/100 Cents ($2,350.00) will be made to Tier Three Class Members.

(D)    **Tax Treatment of Settlement Payments.**  The Settlement Administrator will issue a Form 1099 to each Settlement Class Member for the payments made to them under this Settlement.

**3.5**    **Attorneys' Fees and Costs**

(A)    Consistent with Section 3.1(C), at the Fairness Hearing and in the Motion for Final Approval, Class Counsel will request that the Court approve an award of attorneys' fees and costs in the amount of One Hundred Sixty-Five Thousand Dollars and No/100 Dollars ($165,000.00).

(B)    The attorneys' fees and costs shall be transferred by Defendants to the Settlement Administrator within fourteen (14) days of the Effective Date.

**3.6**    **Service Award to Named Plaintiff and Individual Payment.**

(A)    In return for services rendered to the Class Members, at the Fairness Hearing, Named Plaintiff will apply to the Court to receive a Service Award.  Class Counsel will seek a Service Award of Five Thousand and No/100 Cents ($5,000.00).

11

(B)      In recognition of Plaintiff's individual claim under Title VII, and in consideration for a general release and settlement agreement that will be separately entered into by Named Plaintiff Felipe Kelly, Plaintiff will also receive an additional sum of Twenty Thousand and No/100 Cents ($20,000.00) paid by Defendants (the "Individual Payment").

(C)      The Service Award and Individual Payment shall be transferred by Defendants to the Settlement Administrator within fourteen (14) days of the Effective Date, and as soon as practicable after that date paid out to Plaintiff Kelly.

(D)      The Service Award approved by the Court will be classified as non-wage compensation (reportable on a Form 1099). The Individual Payment will be classified half as wages (reportable on a Form W-2) and half as non-wage compensation (reportable on a Form 1099).

## 4. CLASS PROCEDURAL ISSUES

### 4.1 Notice to Class Members.

(A)      **Class List.** Levy will provide to the Settlement Administrator a confidential class list containing the following information for each such applicant: name, Social Security number, last known address, and to the extent available, e-mail addresses. The Settlement Administrator will maintain the class list and the information contained therein and derived therefrom in a confidential manner, and shall not provide such list or other information to any other entity or person, with the exception of Plaintiff's Counsel, without prior written consent of Defendants. After receipt of the Settlement Class Members' information from Defendants, the Settlement Administrator will perform a search and update using the National Change of Address Database to correct any known or identifiable address changes for Settlement Class Members.

(B)      **Website.** Within five (5) days of Levy's provision of the information set forth in Section 4.1(A) to the Settlement Administrator, the Settlement Administrator will cause a Settlement Website to become active at an agreed to URL that will be limited to the Parties and Class Members with a claim ID. The Settlement Website shall include hyperlinks that allow access to the Complaint, this Agreement, the Court-approved Notice and Claim Form, the Motion for Preliminary Approval, the Preliminary Approval Order, and any other documents agreed to by the Parties. Within two (2) days of any the following documents being filed, the Settlement Website will also be updated to include copies of Plaintiff's Motion for Attorneys' Fees and Costs, Plaintiff's Service Award Payment, all notices and memoranda and exhibits submitted in support of the Motion for Final Settlement Approval, and any further Orders issued by the Court, including any Final Approval Order and Judgment. This information shall remain on the Settlement Website until the date that is thirty (30) days after the void date of the Settlement Class Members' checks.

(C)  **Notice Procedure.** Within fourteen (14) days of receipt of the Settlement Class Members' Information from Defendant, the Settlement Administrator shall cause a copy of the Notice and Claim Form as approved by the Court, to be e-mailed (where available) and mailed by First-Class mail to the Settlement Class Members. The Notice and Claim Form shall provide the URL of the Settlement Website containing the information described above. Tier Two and Three Class Members may submit a Claim Form by mail, e-mail, fax, or online through the Settlement Website. Thirty (30) days before the close of the Acceptance Period, the Settlement Administrator shall send, by mail and e-mail (where available) a reminder postcard to Settlement Class Members who have not submitted a Claim Form as of that date to remind them of their opportunity to claim from the Settlement. The Parties agree that the Notice, sent by e-mail and First-Class mail, constitutes the best notice practicable under the circumstances, and constitutes due and sufficient notice of the pendency of proposed Settlement and a Final Approval Hearing to all persons entitled to notice in full compliance with due process under the United States Constitution and state law.

(D)  **Contents of Notice.** The Notice will contain a description of Plaintiff's claims, a summary of the terms of the proposed Settlement, a description of the Settlement Class, a description of the Allocation Formula, will identify the Settlement Website maintained by the Settlement Administrator, and will provide information about the Fairness Hearing to be held, as well as any other information required by the Federal Rules of Civil Procedure, including Rule 23(c)(2), and any information required by the Court. The Settlement Administrator shall also include a Claim Form, in the same mailing as the Notice when the Notice is sent, for individuals deemed to be potential Tier Two and Tier Three Class Members.

(E)  **Acceptance Period.** In order to be timely, Claim Forms sent by e-mail (and not returned as undeliverable) or mailed by the Settlement Administrator must be returned to the Settlement Administrator by the date that is sixty (60) days after the date they are mailed by the Settlement Administrator (*i.e.* the Claim Bar Date). No Claim Form will be considered if it is received by fax or e-mail or the envelope returning it to the Settlement Administrator is postmarked later than the Claim Bar Date, unless by agreement of the Parties. To the extent a Class Member requests an additional mailed Claim Form within the last twenty (20) days of the Acceptance Period, he/she shall be provided ten (10) additional days to submit a Claim Form— which means that the last possible date when a Class Member could submit a timely Claim Form would be seventy (70) days after the date the original Claim Form was mailed by the Settlement Administrator. Additional time also may be provided to a Class Member who misses the Claim Bar Date if good cause, as determined by the Settlement Administrator, is demonstrated by the potential class member.

(F)  The Settlement Administrator will take all reasonable steps to obtain the correct address of any Class Members or potential Class Members for whom a Notice is returned by the post office as undeliverable and shall attempt to re-mail the Notice to the updated address. The Settlement Administrator will notify Class Counsel

13

        and Defendants' Counsel if any Notice sent to a Class Member or potential Class Member is returned as undeliverable after the first mailing, as well as if any such Notice is returned as undeliverable after any subsequent mailing(s) as set forth in this Agreement.

(G)     All Class Members and potential Class Members will be deemed to have filed their Claim Forms on the date the Claim Form is postmarked, or otherwise faxed or e-mailed to the Settlement Administrator or submitted on the Settlement Website.

(H)     The Settlement Administrator shall cause settlement checks to be mailed to Tier One, Two, and Three Settlement Class Members within thirty (30) days of the Effective Date.

(I)     Checks payable to Settlement Class Members shall have a void date that is ninety (90) days after issuance of the check.

(J)     **Notification of Unredeemed Checks.** The Settlement Administrator will send out a reminder postcard, by e-mail (where available) and First-Class mail directed to the Settlement Class Member's last known or updated address. The reminder postcard will be sent halfway through the ninety (90) day period, reminding Settlement Class Members of their opportunity to cash their settlement checks.

(K)     **Final Disposition of Unclaimed Monies.** Within thirty (30) days of the last check going stale, any remaining uncashed amounts shall be used by the Settlement Administrator to pay for the agreed-to costs of settlement administration. If additional monies from uncashed checks to Settlement Class Members exists after payment of the costs to the Settlement Administrator, the Excess Funds shall be paid by the Settlement Administrator to GOSO. Notwithstanding this provision, Defendants shall pay $5,000.00 to GOSO, only if the Excess Funds are less than that amount.

**4.2**     **Class Member Opt Outs.**

(A)     Any Class Member who chooses to opt out of the Settlement as set forth in this Agreement must mail via First-Class mail, postage prepaid, a written, signed statement to the Settlement Administrator that states his/her name, address, e-mail address(es) and telephone number(s) and that states, "I opt out of the Levy at the Barclays Center Applicant Settlement" ("Opt out Statement").

(B)     The end of the time period to opt out of the Settlement ("Opt out Period") shall be forty-five (45) days after the day on which the Settlement Administrator mails a Notice to a Class Member.

(C)     The Settlement Administrator will provide the Parties with copies of all Opt-out Statements as soon as they are received by the Settlement Administrator. At the request of the Parties, and in preparation of the declaration that the Settlement Administrator will submit as part of the Final Approval Motion, the Settlement Administrator will send a list of the names of all individuals who submitted Opt out

14

       Statements to the Parties. The final list will be submitted by Plaintiff, with redaction on any personal identifying information, along with the declaration of the Settlement Administrator, along with the Final Approval Motion. The Settlement Administrator will retain the stamped originals of all Opt out Statements and originals of all envelopes accompanying Opt out Statements in its files until such time as the Settlement Administrator is relieved of its duties and responsibilities under this Agreement.

    (D)    Any Class Member who does not properly submit an Opt out Statement pursuant to this Agreement will be deemed to have accepted the Settlement and the terms of this Agreement, and will be eligible to participate as a Tier One, Two, or Three Class Member as set forth in this Agreement. Any Class Member who fails to submit a claim for relief in accordance with Section 4.1(D) of this Agreement or who opts out under this Section will not be entitled to Class Member Relief.

**4.3    Objections to Settlement.**

    (A)    Class Members who wish to present objections to the proposed Settlement at the Fairness Hearing must first do so in writing. To be considered, such statement must be mailed to the Settlement Administrator via First-Class mail, postage prepaid, and be received by the Settlement Administrator by a date certain forty-five (45) days after the Claims Administrator mails a Notice to such Class Member. The statement must include all reasons for the objection; and any reasons not included in the statement will not be considered. The statement must also include the name, address, e-mail(s), and telephone number(s) for the Class Member making the objection. The Settlement Administrator will stamp the date received on the original and send copies of each objection to Class Counsel and Defendant's Counsel as soon as they are received. The final list will be submitted by Plaintiff, with redaction of any personal identifying information, along with the declaration of the Settlement Administrator attached to the Final Approval Motion.

    (B)    An Objector also has the right to appear at the Fairness Hearing either in person or through counsel hired by the Objector. An Objector who wishes to appear at the Fairness Hearing must state his/her intention to do so in writing in his/her written objections at the time he/she submits his/her written objections. An Objector may withdraw his/her objections at any time. No Class Member may present an objection at the Fairness Hearing based on a reason not stated in his/her written objections. A Class Member who has submitted an Opt out Statement may not submit objections to the Settlement.

    (C)    The Parties may file with the Court written responses to any filed objections no later than three (3) days before the Fairness Hearing.

**4.4** **Fairness Hearing and Motion for Final Approval and Dismissal.**

(A) At the time established by the Court via the Preliminary Approval Motion, Plaintiff's Counsel will file the Final Approval Motion that is consistent with this Agreement.

(B) At the Fairness Hearing and in the Final Approval Motion, Class Counsel will request that the Court, among other things: (1) certify the Class for purposes of settlement; (2) approve the Settlement and Agreement as fair, reasonable, adequate, and binding on all Class Members who have not timely opted out of the Settlement; (3) order the attorneys' fees to be paid to Class Counsel; (4) award the Service Award to Named Plaintiff; (5) order the dismissal with prejudice of all claims asserted or that could have been asserted in the Litigation and the claims of all Class Members who did not opt-out, subject only to an application for relief under Rules 60(b)(1) or 60(d); (6) order entry of Final Judgment in accordance with this Agreement; and (7) retain jurisdiction as necessary for the purpose of facilitating the Settlement and other relief pursuant to this Agreement.

(C) If the Court does not enter a Final Approval Order in accordance with this Agreement, or if the Final Approval Order is set aside on appeal, the Parties will work together in good faith to revise the Agreement to address the Court's concerns, seek reconsideration, and/or attempt other remedial actions to correct any deficiencies in the Agreement. If these attempts are unsuccessful, or the Settlement Class is not certified, the Litigation will proceed as if no settlement had been attempted, and this Settlement will be null and void, with no force and effect.

**5. RELEASE**

**5.1** **Release of Class Member Claims.** By operation of the entry of Final Approval, and except as to such rights or claims as may be created by this Agreement, each Class Member shall release Levy from all claims, demands, causes of action, and liabilities, known and unknown, that he/she had, have, or may have under any legal or equitable theory, against Levy arising from or relating to or concerning his/her denial employment Levy in connection with his/her criminal history under the NYCHRL, the Correction Law, FCRA, NY FCRA, and Title VII, including any right to recover any and all available damages, attorneys' fees and costs. Defendants represent that this Class Release is not intended to and does not release claims of plaintiffs or class members (potential or certified) in *Brooks v. Barclays Center*, No. 17 Civ. 4186 (E.D.N.Y.).

**6. INTERPRETATION AND ENFORCEMENT**

**6.1** **Cooperation Between the Parties; Further Acts**. Plaintiff shall use reasonable best efforts to obtain the Court's approval of this Agreement and all of its terms. The Parties shall reasonably cooperate with each other, and each party, upon the request of any other party, agrees to perform such further acts and to execute and deliver such other documents as are reasonably necessary to carry out the provisions of this Agreement.

16

48466063v.1

**6.2** **Public Statements**.  The Parties and their counsel agree that they will not issue any press releases or initiate any contact with the media about the fact, amount, or terms of the Settlement.  The Parties further agree that if any party receives a press inquiry regarding the Settlement, they will work cooperatively with the other party to develop a statement responsive to the inquiry.  Nothing in this provision shall prevent Defendants from making any required disclosures.

**6.3** **Entire Agreement**.  This Agreement constitutes the entire agreement between the Parties with regard to the subject matter contained herein, and all prior and contemporaneous negotiations and understandings between the Parties shall be deemed merged into this Agreement.

**6.4** **Binding Effect.**  This Agreement shall be binding upon the Parties and, with respect to Named Plaintiff and all Class Members, their spouses, children, representatives, heirs, administrators, executors, beneficiaries, conservators, attorneys, and assigns.

**6.5** **Arms' Length Transaction; Materiality of Terms.**  The Parties have negotiated all the terms and conditions of this Agreement at arms' length.  All terms and conditions of this Agreement in the exact form set forth in this Agreement are material to this Agreement and have been relied upon by the Parties in entering into this Agreement, unless otherwise expressly stated.

**6.6** **Captions.**  The captions or headings of the Sections and paragraphs of this Agreement have been inserted for convenience of reference only and shall have no effect upon the construction or interpretation of any part of this Agreement.

**6.7** **Construction.**  The determination of the terms and conditions of this Agreement has been by mutual agreement of the Parties.  Each party participated jointly in the drafting of this Agreement, and therefore the terms and conditions of this Agreement are not intended to be, and shall not be, construed against any party by virtue of draftsmanship.

**6.8** **Governing Law**.  This Agreement shall in all respects be interpreted, enforced and governed by and under the laws of the State of New York without regard to its conflict of laws principles.

**6.9** **Continuing Jurisdiction.**  The Court shall retain jurisdiction over the interpretation and implementation of this Agreement as well as any and all matters arising out of, or related to, the interpretation or implementation of this Agreement and of the Settlement contemplated thereby.

**6.10** **Waivers To Be in Writing.**  No waiver, modification or amendment of the terms of this Agreement, whether purportedly made before or after the Court's approval of this Agreement, shall be valid or binding unless in writing, signed by or on behalf of the Named Plaintiff and Defendants and then only to the extent set forth in such written waiver, modification, or amendment, subject to any required Court approval.  Any failure by a Parties to insist upon the strict performance by any other party of any of the provisions of this Agreement shall not be deemed a waiver of future performance of the same provisions or of any of the other provisions of this Agreement, and such party, notwithstanding such

17

failure, shall have the right thereafter to insist upon the specific performance of any and all of the provisions of this Agreement.

6.11 **When Agreement Becomes Binding; Counterparts.** This Agreement shall become valid and binding upon its complete execution, except that it shall be without force or effect if not approved by the Court other than as to any act or obligation that is required or contemplated to occur prior to the Court's decision whether to preliminarily or finally approve the settlement. The Parties may execute this Agreement in counterparts, and execution in counterparts shall have the same force and effect as if all Parties had signed the same instrument.

6.12 **Facsimile and E-mail Signatures.** Any signature made and transmitted by facsimile or e-mail for the purpose of executing this Agreement shall be deemed an original signature for purposes of this Agreement and shall be binding upon the party whose counsel transmits the signature page by facsimile or e-mail.

**WE AGREE TO THESE TERMS,**

Dated: New York, New York
August 21, 2018

By: _____
**SEYFARTH SHAW LLP**
Frederick T. Smith
1075 Peachtree Street, N.E.
Suite 2500
Atlanta, Georgia 30309
Tel.: (404) 888-1021

Gina Merrill
620 Eighth Avenue
New York, New York 10018
Tel.: (212) 218-4648

*Attorneys for Defendants*

By: _____
**OUTTEN & GOLDEN LLP**
Ossai Miazad
Christopher M. McNerney
Nina T. Martinez
685 Third Ave, 25th Floor
New York, New York 10017
Tel.: (212) 245-1000

**YOUTH REPRESENT**
Michael Pope
Eric Eingold
11 Park Place, Suite 1512
New York, New York 10007
Tel.: (646) 759-8080

*Attorneys for Plaintiff and the Putative Settlement Class*