**OUTTEN & GOLDEN LLP**
Ossai Miazad
Christopher M. McNerney
Nina T. Martinez
685 Third Avenue, 25th Floor
New York, New York 10017

**YOUTH REPRESENT**
Michael C. Pope
Eric Eingold
11 Park Place, Suite 1512
New York, New York 10007

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| **FELIPE KELLY, individually and on behalf of all others similarly situated,** | |
| **Plaintiff,** | |
| **v.** | |
| **BROOKLYN EVENTS CENTER, LLC d/b/a BARCLAYS CENTER, LEVY PREMIUM FOODSERVICE LIMITED PARTNERSHIP, and PROFESSIONAL SPORTS CATERING LLC,** | **No. 1:17-cv-4600 (KAM)(RLM)** |
| **Defendants.** | |

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S UNOPPOSED MOTION FOR CERTIFICATION OF THE SETTLEMENT CLASS AND FINAL APPROVAL OF CLASS ACTION SETTLEMENT

## <u>TABLE OF CONTENTS</u>

INTRODUCTION .................................................................................................. 1

FACTUAL AND PROCEDURAL BACKGROUND ......................................................... 2

SUMMARY OF THE SETTLEMENT TERMS ............................................................. 3

    I.      The Settlement Amount ................................................................. 3

    II.     Claims Submissions and Settlement Amounts Claimed ....................... 4

    III.    Programmatic Relief ..................................................................... 4

    IV.    Class Members .............................................................................. 5

    V.      Release ......................................................................................... 6

    VI.    Attorneys' Fees and Costs & Service Award .................................... 6

    VII.   CAFA Notice ................................................................................ 6

    VIII.  Settlement Administration ............................................................. 6

    IX.    Objections and Opt-Outs ............................................................... 7

ARGUMENT ..................................................................................................... 7

    I.      The Settlement Class Meets the Legal Standard for Class Certification. ............... 7

         A.    Numerosity ............................................................................ 8

         B.    Commonality .......................................................................... 8

         C.    Typicality. ............................................................................. 9

         D.    Adequacy of the Named Plaintiff and His Counsel. ................................. 10

         E.    Certification is Proper Under Rule 23(b)(3). ............................ 12

             1.    Common Questions Predominate. ................................ 12

             2.    A Class Action is a Superior Mechanism. .................... 13

    II.     The Proposed Settlement is Fair, Reasonable, and Adequate. .......................... 14

         A.    The Proposed Settlement is Procedurally Fair. .......................... 14

         B.    The Proposed Settlement Is Substantively Fair. ........................ 17

1.   Litigation Through Trial Would Be Complex, Costly,
and Long (*Grinnell* Factor 1). ........................................................ 17

2.   The Reaction of the Class Has Been Positive
(*Grinnell* Factor 2). ....................................................................... 18

3.   Discovery Has Advanced Far Enough to Allow the Parties to
Resolve the Case Responsibly (*Grinnell* Factor 3). ..................... 19

4.   The Risk of Establishing Liability and Damages for the Class
Through Trial Favors Approval (*Grinnell* Factors 4 and 5). ........ 21

5.   The Risk of Obtaining Class Certification Favors Approval
(*Grinnell* Factor 6). ....................................................................... 21

6.   Defendant's Ability to Withstand a Greater Judgment Is Not
Determinative (*Grinnell* Factor 7). ............................................... 22

7.   The Settlement Is Substantial, Even in Light of the Best Possible
Recovery and the Risks of Litigation
(*Grinnell* Factors 8 and 9). ............................................................ 22

CONCLUSION ...................................................................................... 24

## **TABLE OF AUTHORITIES**

**Cases**                                                                     **Page(s)**

*Amchem Prods., Inc. v. Windsor*,
   521 U.S. 591 (1997)....................................................................................... 12, 13

*In re Austrian & German Bank Holocaust Litig.*,
   80 F. Supp. 2d 164 (S.D.N.Y. 2000)......................................................... 17, 20, 22

*Ballinger v. Advance Magazine Publishers, Inc.*,
   No. 13 Civ. 4036, 2014 WL 7495092 (S.D.N.Y. Dec. 29, 2014)........................... 20

*Beckman v. Keybank, N.A.*,
   293 F.R.D. 467 (S.D.N.Y. 2013) ....................................................................... 11

*Behzadi v. Int'l Creative Mgmt. Partners, LLC*,
   No. 14 Civ. 4382, 2015 WL 4210906 (S.D.N.Y. July 9, 2015) ............................ 18

*Capsolas v. Pasta Res. Inc.*,
   No. 10 Civ. 5595, 2012 WL 1656920 (S.D.N.Y May 9, 2012)............................. 14

*In re Cendant Corp. Litig.*,
   264 F.city of de3d 201 (3d Cir. 2001) ................................................................ 19

*City of Detroit v. Grinnell Corp.*,
   495 F.2d 448 (2d Cir. 1974)........................................................................ 14, 17

*Consol. Rail Corp. v. Town of Hyde Park*,
   47 F.3d 473 (2d Cir. 1995)................................................................................. 8

*Cordes & Co. Fin. Servs., Inc. v. A.G. Edwards & Sons, Inc.*,
   502 F.3d 91 (2d Cir. 2007)............................................................................... 12

*D'Amato v. Deutsche Bank*,
   236 F.3d 78 (2d Cir. 2001)......................................................................... 14, 16

*Delmoral v. Credit Prot. Ass'n, LP*,
   No. 13 Civ. 242, 2015 WL 5793311 (E.D.N.Y. Sept. 30, 2015)........................... 22

*Domonoske v. Bank of Am., N.A.*,
   790 F. Supp. 2d 466 (W.D. Va. 2011) ............................................................... 23

*In re Drexel Burnham Lambert Grp.*,
   960 F.2d 285 (2d Cir. 1992)............................................................................... 9

*Dziennik v. Sealift, Inc.*,
   No. 05 Civ. 4659, 2007 WL 1580080 (E.D.N.Y. May 29, 2007) .......................... 10

*Easterling v. Conn. Dep't of Corr.*,
    No. 08 Civ. 826, 2011 WL 5864829 (D. Conn. Nov. 22, 2011)...........................................13

*In re EVCI Career Colls. Holding Corp. Sec. Litig.*,
    Nos. 05 Civ. 10240, 2007 WL 2230177 (S.D.N.Y. July 27, 2007)......................................17

*Flores v. Anjost Corp.*,
    No. 11 Civ. 1531, 2014 WL 321831 (S.D.N.Y. Jan. 29, 2014)...........................................16

*Frank v. Eastman Kodak Co.*,
    228 F.R.D. 174 (W.D.N.Y. 2005)..................................................................................9, 13

*Gen. Tel. Co. of Sw. v. Falcon*,
    457 U.S. 147 (1982)...............................................................................................................8

*Gilliam v. Addicts Rehab. Ctr. Fund*,
    No. 05 Civ. 3452, 2008 WL 782596 (S.D.N.Y. Mar. 24, 2008)........................................23

*Goldberger v. Integrated Res., Inc.*
    209 F.3d 43 (2nd Cir. 2000)..............................................................................................14

*Green v. Wolf Corp.*,
    406 F.2d 291 (2d Cir. 1968).............................................................................................13

*Houser v. Pritzker*,
    28 F. Supp. 3d 222 (S.D.N.Y. 2014)................................................................................11

*In re Initial Pub. Offering Sec.Litig.*,
    471 F.3d 24 (2d Cir. 2006)...............................................................................................12

*Int'l Brotherhood of Teamsters v. United States*,
    431 U.S. 324 (1977)..........................................................................................................21

*In re Ira Haupt & Co.*,
    304 F. Supp. 917 (S.D.N.Y. 1969) ..................................................................................21

*Karic v. Major Auto. Cos., Inc.*,
    No. 09 Civ. 5708, 2016 WL 1745037 (E.D.N.Y. Apr. 27, 2016)......................................19

*Katz v. ABP Corp.*,
    No. 12 Civ. 4173, 2014 WL 4966052 (E.D.N.Y. Oct. 3, 2014) ........................................20

*Keele v. Wexler*,
    149 F.3d 589 (7th Cir. 1998) .............................................................................................8

*Keels v. Geo Grp., Inc.*,
    No. 15 Civ. 6261, 2017 WL 4477000 (E.D.N.Y. Oct. 1, 2017) ........................................11

*Lizondro-Garcia v. Kefi LLC*,
  No. 12 Civ. 1906, 2014 WL 4996248 (S.D.N.Y. Oct. 7, 2014) ............................................... 19

*Manuel v. Wells Fargo Bank, N.A.*,
  No. 14 Civ. 238, 2015 WL 4994549 (E.D. Va. Aug. 19, 2015) ............................................... 9
  No. 14 Civ. 238, 2016 WL 1070819 (E.D. Va. Mar. 15, 2016) ............................................... 23

*Marisol A. v. Giuliani*,
  126 F.3d 372 (2d Cir. 1997)..................................................................................................... 9

*Martens v. Smith Barney Inc.*,
  181 F.R.D. 243 (S.D.N.Y. 1998) ..................................................................................... 10, 20

*McBean v. City of N.Y.*,
  228 F.R.D. 487 (S.D.N.Y. 2005) ............................................................................................. 12

*Morris v. Affinity Health Plan, Inc.*,
  859 F. Supp. 2d 611 (S.D.N.Y. 2012).............................................................................. 19, 20

*Penney v. Deutsche Bank AG*,
  443 F.3d 253 (2d Cir. 2006)................................................................................................... 10

*Pickett v. SIMOS Insourcing Sols., Corp.*,
  No. 17 Civ. 1013, 2017 WL 3444755 (N.D. Ill. Aug. 10, 2017)............................................ 11

*Puglisi v. TD Bank, N.A.*,
  No. 13 Civ. 637, 2015 WL 4608655 (E.D.N.Y. July 30, 2015) ....................................... 10, 11

*Rhom v. Thumbtack, Inc.*,
  No. 16 Civ. 2008, 2017 WL 4642409 (N.D. Cal. Oct. 17, 2017)........................................... 19

*Roach v. T.L. Cannon Corp.*,
  778 F.3d 401 (2d Cir. 2015)................................................................................................... 12

*Robidoux v. Celani*,
  987 F.2d 931 (2d Cir. 1993)................................................................................................ 8, 9

*Rosario v. Livaditis*,
  963 F.2d 1013 (7th Cir. 1992) ................................................................................................. 8

*Shahriar v. Smith & Wollensky Rest. Grp., Inc.*,
  659 F.3d 234 (2d Cir. 2011)................................................................................................... 22

*Slomovics v. All for a Dollar, Inc.*,
  906 F. Supp. 146 (E.D.N.Y. 1995) ......................................................................................... 18

*Spann v. AOL Time Warner Inc.*,
  No. 02 Civ. 8238, 2005 WL 1330937 (S.D.N.Y. June 7, 2005).................................. 14, 15, 16

*Syed v. M-I LLC*,
    No. 14 Civ. 742, 2016 WL 310135 (E.D. Cal. Jan. 26, 2016)...................................... 23

*Teachers' Ret. Sys. of La. v. A.C.L.N., Ltd.*,
    No. 01 Civ. 11814, 2004 WL 1087261 (S.D.N.Y. May 14, 2004).............................. 23

*Thomas v. FTS USA, LLC*,
    312 F.R.D. 407 (E.D. Va. 2016) .............................................................................. 8, 10

*Times v. Target Corp.*,
    No. 18 Civ. 02993, 2018 WL 3238821 (S.D.N.Y May 14, 2018)............................ 13

*Toure v. Amerigroup Corp.*,
    No. 10 Civ. 5391, 2012 WL 3240461 (E.D.N.Y. Aug. 6, 2012).............................. 16

*Tyson Foods Inc. v. Bouaphakeo*,
    136 S. Ct. 1036 (2016) ............................................................................................. 12

*United States v. City of N.Y.*,
    276 F.R.D. 22 (E.D.N.Y. 2011) ............................................................................... 13

*In re Visa Check/MasterMoney Antitrust Litig.*,
    280 F.3d 124 (2d Cir. 2001)............................................................................... 12, 13

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*,
    396 F.3d 96 (2d Cir. 2005)................................................................................. 14, 16

*In re Warfarin Sodium Antitrust Litig.*,
    391 F.3d 516 (3d Cir. 2004)..................................................................................... 19

*Watkins v. Hireright, Inc.*,
    No. 13 Civ. 1432, 2016 WL 1732652 (S.D. Cal. May 2, 2016)............................ 23
    No. 13 Civ. 1432, 2016 WL 5719812 (S.D. Cal. Sept. 30, 2016) .......................... 19

## Statutes

15 U.S.C. § 1681 ............................................................................................................ 2

28 U.S.C. § 1715(d) ....................................................................................................... 6

N.Y. Gen. Bus. Law § 380.............................................................................................. 2

N.Y.C. Admin. Code § 8-101 ........................................................................................ 2

## Statutes

Fed. R. Civ. P. 23……………………………………………………………………*passim*

## INTRODUCTION

Plaintiff Felipe Kelly respectfully submits this Memorandum of Law in Support of his Motion for Final Approval of the Class Settlement reached by Plaintiff and Levy Premium Foodservice Limited Partnership ("Defendant" or "Levy") (collectively, the "Parties"). The proposed settlement is fair, reasonable, and adequate, and satisfies all of the criteria for final approval under applicable law. The relief provides in the settlement is comprehensive and targeted to the harm addressed in this litigation. In particular, it provided a comprehensive process for reviewing, evaluating and revamping Levy's hiring policies at the Barclays Center and it affords class members opportunities to obtain valuable employment opportunities and/or compensation. Eligible Class Members are entitled to a job opportunity and monetary compensation of $1,950.00, or monetary compensation of $2,350.00, depending on whether they qualify as Tier Two or Tier Three Class Members. For Tier One Class Members, who are not eligible for employment with Levy, a recovery of $250.00 is an excellent class recovery to account for statutory damages under the Fair Credit Reporting Act ("FCRA") and nominal damages under the New York City Fair Chance Act ("FCA"). Accordingly, Plaintiff seeks an order: (1) certifying the settlement class described below; and (2) approving as fair and adequate the class-wide settlement of this action, as set forth in the Settlement Agreement, attached as Ex. A to the Declaration of Ossai Miazad.[1]

On October 2, 2018, the Court took the first step in the settlement approval process by preliminarily approving the Settlement Agreement; provisionally certifying the Settlement Class[2]

---

[1]    Unless otherwise indicated, all exhibits are attached to the Declaration of Ossai Miazad in Support of Plaintiff's Unopposed Motions for Certification of the Settlement Class and Final Approval of the Class Action Settlement, Approval of Attorneys' Fees and Costs, and Approval of Service Award ("Miazad Decl.").

[2]    Unless otherwise indicated, all capitalized terms have the definitions set forth in the Settlement Agreement.

pursuant to Federal Rule of Civil Procedure 23; appointing Outten & Golden LLP ("O&G") and Youth Represent ("YR") as Class Counsel; and directing that notice be sent to the Class Members.  Oct. 2, 2018, Order.

Class Members have been notified of the terms of the settlement, including the monetary relief, the allocation of settlement funds, and their right to opt out of or object to the settlement. Ex. B (Declaration of Keith Salhab Re: Notice Procedures ("Salhab Decl.")) at Exs. 1-3 (Notices).  As of August 19, 2019, 37 Class Members have submitted valid Claim Forms, no Class Members have objected and only one Class Member, who entered into an individual settlement with Levy, has opted-out.  Ex. B (Salhab Decl.) ¶¶ 13-15.

Accordingly, for the reasons stated below, the Court should grant final approval.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff's Class Action Complaint alleges that Defendant violated the NYCHRL, N.Y.C. Admin. Code § 8-101 *et seq*., by rescinding a conditional offer of employment based on criminal history information revealed on a background check, and Article 23-A of the New York State Correction Law ("Correction Law"), the FCRA, 15 U.S.C. § 1681 *et seq*., and the New York State Fair Credit Reporting Act ("NY FCRA"), N.Y. Gen. Bus. Law § 380 *et seq*., by failing to provide Kelly, and other job applicants, with a copy of their consumer reports, a statement of their rights under the FCRA, a Fair Chance Act Notice and a copy of Article 23-A of the New York State Correction Law—*before* denying them employment.  *See* ECF No. 1; Miazad Decl. ¶ 12.  Plaintiff incorporates by reference the factual allegations and procedural history set forth in Plaintiff's Memorandum of Law in Support of Plaintiff's Unopposed Motion for Preliminary Approval of Class Action Settlement, Conditional Certification of the Settlement Class, Appointment of Class Counsel, and Approval of Plaintiff's Proposed Notice of Settlement.  *See* ECF No. 31.

2

## SUMMARY OF THE SETTLEMENT TERMS

### I.       The Settlement Amount

Pursuant to the Settlement Agreement, Class Members who stated on their Claim Form that they seek the job for which they originally applied and who are not disqualified from employment under the Approved Background Check Policy will be provided an opportunity for employment with Levy at the Barclays Center and receive a monetary award of $1,950.00 ("Tier Two Class Members").  Ex. A (Settlement Agreement) § 3.4(B).  Class Members who are not disqualified from employment under the Approved Background Check Policy but state on their Claim Form that they are not seeking employment with Levy at the Barclays Center will receive a monetary award of $2,350.00 through the settlement ("Tier Three Class Members").  *Id.* § 3.4(C).  Class Members who fail to timely file a claim or who are not eligible for hire because they are disqualified under the Approved Background Check Policy will receive a monetary award of $250.00 to account for their statutory damages under the FCRA and nominal damages under the FCA ("Tier One Class Members").  *Id.* § 3.4(A).  Further, Class Members who had a pending charge at the time they applied to Barclays ("Pending Charges Class Members") have been provided an opportunity to select either Tier Two or Tier Three relief, pending a background check verifying the outcome of their then pending charge.  Miazad Decl. ¶ 27.  If that charge resulted a non-disqualifying conviction, they will be entitled to the relief they selected, and if it resulted in a disqualifying conviction, they will be entitled to the $250.00 Tier One relief.  *Id.*

The settlement also provides up to $5,000.00 in funding to Getting Out and Staying Out (GOSO), a New York City non-profit organization that assists individuals with criminal histories to re-enter the workforce.  *Id.* § 3.1(G).  Further, Levy has also agreed to pay the Consultant's fees and the costs of administering the settlement.  *Id.*  §§ 3.1(D)-(E).

## II.     Claims Submissions and Settlement Amounts Claimed

The Settlement Administrator has received 37 valid Claim Forms, amounting to 50.7% of the eligible Class Members who could submit Claim Forms.  *See* Ex. B (Salhab Decl.) ¶ 14. This number accounts for 28 Class Members who have claimed Tier Three Class Relief and 9 Class Members who have claimed Tier Two Class Relief.[3]  *See id.*

In total, Class Members will receive a maximum of $99,350.00 in monetary relief from the settlement.  Miazad Decl. ¶ 27.[4]  This number consists of $68,800.00 for Tier Three Class Members, $17,550.00 for Tier Two Class Members, $7,000.00 for Tier Two and Three Class Members and Pending Class Members who did not submit Claim Forms and $9,000.00 for Tier One Class Members.  *Id.*

## III.    Programmatic Relief

The Parties jointly selected the Industrial and Organizational Psychology ("IO") expert, Dr. Toni Locklear of APTMetrics, to serve as an independent consultant to review and propose modifications to Levy's policies and procedures for the use of criminal history records in post-conditional offer hiring decisions at the Barclays Center.  *Id.* §§ 1.12, 3.3(A).

In connection with the Settlement Agreement, Levy entered into a consulting agreement with Dr. Locklear in August 2018.  *Id.* § 3.3(B); *see* Miazad Decl. ¶ 22.  Pursuant to the Settlement Agreement, Levy provided the consultant with all relevant and accessible information

---

[3]      Of the Class Members who submitted Tier Three Claim Forms, 14 were Tier Two or Three Class Members and 14 were Pending Charges Class Members.  Salhab Decl. ¶ 14.  Of the Class Members who submitted Tier Two Claim Forms, 3 were Tier Two or Three Class Members and 6 were Pending Charges Class Members.  *Id.*  In total, 17 of the 43 Tier Two and Three Class Members submitted Claim Forms (39.5%).  Miazad Decl. ¶ 27; *see also* Salhab Decl. ¶¶ 12, 14.  In total, 20 of the 30 Pending Charges Class Members submitted Claim Forms (66.7%).  Miazad Decl. ¶ 27; *see also* Salhab Decl. ¶¶ 12, 14.

[4]      This number will decrease if any of the Pending Charges Class Members are determined by Levy to be ineligible for potential employment.

relating to Levy's adjudication guidelines and practices relating to the use of criminal history

background checks in hiring.  *Id.* § 3.3(D).  As part of her review, Dr. Locklear analyzed various

Levy policy documents, including internal correspondences regarding Levy's criminal

background review practices, in order to identify the strengths and weaknesses of its then-current

practices.  Miazad Decl. ¶ 23.  After a review of that information, on October 29, 2018, Dr.

Locklear provided a thorough report and written proposed modifications to the Parties, consistent

with her review of Levy's current background check policies and practices in light of the

NYCHRL, the Correction Law, FCRA, NY FCRA, and Title VII.  *Id.* § 3.3(E).

On December 21, 2018, Levy submitted a thorough response to Dr. Locklear's report and

consented to follow the guidance set forth in Dr. Locklear's written recommendations.  Miazad

Decl. ¶ 25.  Dr. Locklear's recommendations include specific steps for Levy to take to achieve a

validated criminal history screening process.  *Id.* § 3.3(E)(2); Miazad Decl. ¶ 25.

Additionally, the Settlement Agreement sets forth a binding process for resolving

disputes related to the programmatic relief component of the settlement.  *Id.* § 3.3(E)(3)-(5).

Levy also has agreed to keep records reflecting its compliance with the policies and practices

established as part of the process set forth in the Settlement Agreement, and will provide this

documentation to Dr. Locklear in 2020, who will determine whether Levy has complied with its

obligations.  *Id.* § 3.3(F).

## IV.   **Class Members**

Class Members are:

[A]pplicants who applied for a position with Levy at the Barclays Center during
the Class Period [August 4, 2014 through August 15, 2018], and: (i) were otherwise
eligible for employment (*e.g.*, did not fail their pre-employment drug tests or have
an invalid Social Security number that would have precluded Levy from procuring
a background report on them); (ii) were identified by Levy as having a background
report showing a criminal history (*i.e.*, either a conviction or a pending charge)
through background reports procured from a consumer reporting agency retained

5

by Levy; and (iii) who were not hired by Levy either because of unintentional administrative error or on the basis of their criminal history, [except] . . . individuals that Levy can establish were, or would have been, denied employment for reasons other than their criminal history records (*e.g.* failed drug test, SSN name-match screen, or similar reasons).

*Id.* § 3.2.

## V.   <u>Release</u>

All Class Members who do not exclude themselves from the settlement will release:

All claims, demands, causes of action, and liabilities, known and unknown, that he/she had, have, or may have under any legal or equitable theory, against Levy arising from or relating to or concerning his/her denial of employment by Levy in connection with his/her criminal history under the NYCHRL, the Correction Law, FCRA, NY FCRA, and Title VII, including any right to recover any and all available damages, attorneys' fees and costs.

Ex. A (Settlement Agreement) § 5.1.

## VI.   <u>Attorneys' Fees and Costs & Service Award</u>

Plaintiff also moves the Court for approval of an award of no more than $165,000.00 in attorneys' fees and costs—amounts which were separately negotiated after injunctive relief and Class Member recovery.  *Id.* § 3.5; Miazad Decl. ¶ 46.  In addition, Plaintiff seeks a Service Award of $5,000.00.  *Id.* § 3.6.  Plaintiff submits a Motion for Approval of Attorneys' Fees and Costs and a Motion for Approval of Service Award simultaneously with the instant motion.

## VII.   <u>CAFA Notice</u>

Levy sent notices to federal and state authorities as required by the Class Action Fairness Act ("CAFA") on October 18, 2018.  *See* 28 U.S.C. § 1715(d).  Miazad Decl. ¶ 26.

## VIII.   <u>Settlement Administration</u>

The Parties selected American Legal Claim Services ("ALCS"), an experienced class action claims administrator, to administer the settlement.  The Settlement Administrator's costs and expenses of approximately $8,871.00 will be paid by Levy in addition to the settlement amounts.  Ex. A (Settlement Agreement) § *Id.* § 3.1(E); *see* Ex. B (Salhab Decl.) ¶ 17.

On June 10, 2019, the Settlement Administrator mailed 101 and e-mailed 92 Court-approved notices.  Ex. B (Salhab Decl.) ¶¶ 6, 10.  On July 10, 2019, the Settlement Administrator sent reminder postcards by U.S. mail and e-mail to 56 Class Members who had not submitted a Claim Form or Request for Exclusion.  *Id.* ¶ 7.

## IX.     Objections and Opt-Outs

The Notice advised Class Members that they could object to or exclude themselves from the settlement.  Ex. B (Salhab Decl.) ¶¶ 13, 15 at Exs. 1-3 (Notices) ¶¶ 10, 11.  No Class Members have objected to the settlement and one requested exclusion from the settlement.

On August 14, 2019, after the August 9, 2019 deadline to file a request for exclusion, the Settlement Administrator received one opt-out request.  This individual seeks exclusion from the settlement because, through counsel, he asserted individual claims against Levy in January 2018 based on his application for employment and the background check conducted by Levy.  Miazad Decl. ¶ 28.  The individual and Levy agreed to a settlement in January 2019.  *Id.*  On August 19, 2019, the Parties informed the Settlement Administrator that they agreed to the inclusion of the late-filed opt-out form.  Ex. B (Salhab Decl.) ¶ 13.

## ARGUMENT

### I.     The Settlement Class Meets the Legal Standard for Class Certification.

On October 2, 2018, the Court preliminarily certified the Settlement Class.  Oct. 2, 2018, Order.  Plaintiff now respectfully requests that the Court grant final certification because the Settlement Class continues to meet all of the requirements of Rule 23.[5]

---

[5]     Under Rule 23, a class action may be maintained if all of the prongs of Rule 23(a) are met, as well as one of the prongs of Rule 23(b).  Rule 23(a) requires that: "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the

### A.     Numerosity.

"[N]umerosity is presumed at a level of 40 members." *Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995).  Here, the proposed Class is comprised of 101 job applicants, making joinder impracticable.  *See* Miazad Decl. ¶ 29; *see also* Fed. R. Civ. P. 23(a)(1); *Robidoux v. Celani*, 987 F.2d 931, 936 (2d Cir. 1993).

### B.     Commonality.

The proposed class satisfies the commonality requirement, which tests "whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 157 n.13 (1982).  The requirement requires only "questions of law or fact common to the class." *Keele v. Wexler*, 149 F.3d 589, 594 (7th Cir. 1998).  Some factual variation among class members will not defeat a class action.  *Rosario v. Livaditis*, 963 F.2d 1013, 1017-18 (7th Cir. 1992).

This case involves numerous common issues.  Plaintiff and Class Members all share the common contention that they were improperly denied employment at the Barclays Center without an individualized inquiry seeking information regarding the circumstances of their criminal history, being provided pre-adverse action notice packets (*i.e.* consumer reports and statements of FCRA rights) or, after the enactment of the FCA, a Fair Chance Act Notice.  These common factual and legal questions satisfy commonality for settlement purposes.  *Thomas v.*

---

claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a).  Rule 23(b)(3) requires the Court to find that questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.  *Id.* at (b)(3).

*FTS USA, LLC*, 312 F.R.D. 407, 417-18 (E.D. Va. 2016) (finding commonality when pre-adverse action notices were never sent); *Manuel v. Wells Fargo Bank, N.A.*, No. 14 Civ. 238, 2015 WL 4994549, at \*10-12 (E.D. Va. Aug. 19, 2015) (substantively same); *see also Pickett v. Simos Insourcing Sols., Corp.*, 249 F. Supp. 3d 897, 899 (N.D. Ill. 2017) (for settlement purposes, commonality satisfied where defendant "uniformly failed to provide individuals with pre-adverse action notice packets").

    **C.**    **Typicality.**

Rule 23 requires that the claims of the representative party be typical of the claims of the Settlement Class. "Like the commonality requirement, typicality does not require the representative party's claims to be identical to those of all class members." *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 182 (W.D.N.Y. 2005). Typicality is often satisfied "when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Marisol A. v. Giuliani*, 126 F.3d 372, 376 (2d Cir. 1997) (quoting *In re Drexel Burnham Lambert Grp.*, 960 F.2d 285, 291 (2d Cir. 1992)) (internal quotation marks omitted). "Minor variations in the fact patterns underlying individual claims" do not defeat typicality when the defendant directs "the same unlawful conduct" at the named plaintiffs and the class. *Robidoux v. Celani*, 987 F.2d 931, 936-37 (2d Cir. 1993).

Here, like the putative Settlement Class, Plaintiff alleges that he was a job applicant denied employment because of his background check without having been provided a pre-adverse action notice packet. *See* ECF No. 1 (Complaint) ¶¶ 1-3, 44-47. Typicality is met for the Settlement Class because Plaintiff was "subjected to the same procedures as all putative class members and it is those procedures that are challenged." *Manuel*, 2015 WL 4994549, at \*14; *see*

*also Thomas*, 312 F.R.D. at 419 ("[L]ike every other class member, Thomas did not receive any pre-adverse action materials[.]").

### D.     Adequacy of the Named Plaintiff and His Counsel.

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). The adequacy requirement exists to ensure that the named representatives will "have an interest in vigorously pursuing the claims of the class, and . . . have no interests antagonistic to the interests of other class members." *Penney v. Deutsche Bank AG*, 443 F.3d 253, 268 (2d Cir. 2006). "[O]nly a conflict that goes to the very subject matter of the litigation will defeat a party's claim of representative status." *Dziennik v. Sealift, Inc.*, No. 05 Civ. 4659, 2007 WL 1580080, at *6 (E.D.N.Y. May 29, 2007) (quoting *Martens v. Smith Barney Inc.*, 181 F.R.D. 243, 259 (S.D.N.Y. 1998)).

Plaintiff does not have interests that are antagonistic to or at odds with the Settlement Class Members' interests. *See Puglisi v. TD Bank, N.A.*, No. 13 Civ. 637, 2015 WL 4608655, at *1 (E.D.N.Y. July 30, 2015) (adequacy satisfied where, *inter alia*, there was no evidence that named plaintiffs' and class members' interests were at odds). Further, Plaintiff has suffered the same alleged state and federal violations as members of the putative class.

Class Counsel also meet the adequacy requirement of Rule 23(g). Rule 23(g), which governs the standards and framework for appointing class counsel, sets forth four criteria the district court must consider in evaluating the adequacy of proposed counsel: (1) "the work counsel has done in identifying or investigating potential claims in the action;" (2) "counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action;" (3) "counsel's knowledge of the applicable law;" and (4) "the resources that counsel will commit to representing the class." Fed. R. Civ. P. 23(g)(1)(A). The Court may also

10

"consider any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class[.]" Fed. R. Civ. P. 23(g)(1)(B). "No single factor should necessarily be determinative in a given case." Fed. R. Civ. P. 23, advisory committee's notes to 2003 amendment.

Class Counsel satisfy these criteria. They have done substantial work identifying, investigating, negotiating, and settling Plaintiff's and putative class members' claims. Miazad Decl. ¶¶ 9-25; Declaration of Michael Pope ("Pope Decl.") ¶ 10. Class Counsel have substantial experience prosecuting and settling employment class actions, including background check cases. Miazad Decl. ¶¶ 6-7. Class Counsel are well-versed in the impediments to employment that criminal records create and are at the forefront of litigating issues of criminal history discrimination. *See, e.g.*, *Keels v. Geo Grp., Inc.*, No. 15 Civ. 6261, 2017 WL 4477000, at *1 (E.D.N.Y. Oct. 1, 2017) (appointing O&G as class counsel in FCRA case) (final approval granted Feb. 23, 2018); *Pickett v. SIMOS Insourcing Sols., Corp.*, No. 17 Civ. 1013, 2017 WL 3444755, at *1 (N.D. Ill. Aug. 10, 2017) (appointing O&G as class counsel in FCRA case); *Houser v. Pritzker*, 28 F. Supp. 3d 222, 248 (S.D.N.Y. 2014) (finding O&G and non-profit partners "bring to the case a wealth of class action litigation experience" and were adequate to represent approximately half-million person Black and Latino job applicant class in background check litigation); Ex. F (July 30, 2015 Hr'g Tr. for *Puglisi v. TD Bank, N.A.*, No. 13 Civ. 637 (E.D.N.Y.)) at 11-12 (lawyering by plaintiffs' counsel—including O&G—was "excellent" and noting "the high level of service that was provided to the class"); *Beckman v. Keybank, N.A.*, 293 F.R.D. 467, 477 (S.D.N.Y. 2013) (attorneys at O&G "are experienced employment lawyers with good reputations among the employment law bar"); *see also* Miazad Decl. ¶¶ 6-7. Pope Decl. ¶¶ 5-9. Thus, for the purposes of settlement, the adequacy requirement is satisfied.

11

### E.    Certification is Proper Under Rule 23(b)(3).

Rule 23(b)(3) requires that the common questions of law or fact "predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).  This inquiry examines 'whether proposed classes are sufficiently cohesive to warrant adjudication by representation."  *Tyson Foods Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016) (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997)).  For the purposes of settlement, these requirements are met.

### 1.    Common Questions Predominate.

Predominance requires that "the issues in the class action that are subject to generalized proof, and thus applicable to the class as a whole, . . . predominate over those issues that are subject only to individualized proof."  *Cordes & Co. Fin. Servs., Inc. v. A.G. Edwards & Sons, Inc.*, 502 F.3d 91, 107-08 (2d Cir. 2007) (quoting *In re Visa Check/MasterMoney Antitrust Litig.*, 280 F.3d 124, 136 (2d Cir. 2001)) (alteration in original).  The essential inquiry is whether "liability can be determined on a class-wide basis, even when there are some individualized damage issues."  *In re Visa Check*, 280 F.3d at 139, *abrogated on other grounds by In re Initial Pub. Offering Sec. Litig.*, 471 F.3d 24 (2d Cir. 2006); *see also Roach v. T.L. Cannon Corp.*, 778 F.3d 401, 405 (2d Cir. 2015) (individualized damages are merely a factor that courts "consider in deciding whether issues susceptible to generalized proof outweigh individual issues[,]" not an absolute bar to class certification) (internal quotation omitted).  Where plaintiffs are "unified by a common legal theory . . . and by common facts[,]" the predominance requirement is satisfied.  *McBean v. City of N.Y.*, 228 F.R.D. 487, 502 (S.D.N.Y. 2005).

Here, Plaintiff's common contentions—that Defendant's criminal history screening

policies were used to deny employment opportunities to otherwise qualified applicants and that

Defendant failed to provide job applicants with pre-adverse action notice packets or Fair Chance

Act Notices—predominate over any issues affecting only individual class members.  *See United*

*States v. City of N.Y.*, 276 F.R.D. 22, 48-49 (E.D.N.Y. 2011) (finding that common issues,

including the aggregate amount of relief available and the criteria used to establish who is

eligible to receive retroactive seniority and priority hiring relief, predominated in a disparate

impact case challenging a written entrance examination, despite individual questions regarding

claimants' mitigation efforts);  *Times v. Target Corp.*, No. 18 Civ. 02993, 2018 WL 3238821

(S.D.N.Y May 14, 2018), at *1 (finding allegations that defendants excluded applicants based on

criminal history predominated for settlement purposes); *see also Easterling v. Conn. Dep't of*

*Corr.*, No. 08 Civ. 826, 2011 WL 5864829, at *8 (D. Conn. Nov. 22, 2011) (finding

predominance satisfied in applicant discrimination class settlement).

### 2.  A Class Action is a Superior Mechanism.

Rule 23(b)(3) next considers whether "the class action device [is] superior to other

methods available for a fair and efficient adjudication of the controversy."  *Green v. Wolf Corp.*,

406 F.2d 291, 301 (2d Cir. 1968).  Rule 23(b)(3) sets forth a non-exclusive list of relevant

factors, including whether individual class members wish to bring, or have already brought,

individual actions, and the desirability of concentrating the litigation of the claims in the

particular forum.[6]  Fed. R. Civ. P. 23(b)(3).

---

[6]      Another factor, whether the case would be manageable as a class action at trial, is not of
consequence in the context of a proposed settlement.  *See Amchem Prods.*, 521 U.S. at 620
("Confronted with a request for settlement-only class certification, a district court need not
inquire whether the case, if tried, would present intractable management problems."); *Frank*, 228
F.R.D. at 183 (same, citing *Amchem Prods.*).  Moreover, denying class certification
on manageability grounds is "disfavored" and "should be the exception rather than the rule."  *In re
Visa Check*, 280 F.3d at 140 (internal quotation marks omitted).

Here, certification of the Settlement Class is "superior to individual adjudication because it will conserve judicial resources and is more efficient for Class Members, particularly those who lack the resources to bring their claims individually." *Capsolas v. Pasta Resources Inc.*, No. 10 Civ. 5595, 2012 WL 1656920 (S.D.N.Y May 9, 2012), at *2.  Plaintiff and Class Members have limited financial resources with which to prosecute individual actions. Employing the class device here will achieve economies of scale for putative class members, conserve judicial resources, and preserve public confidence in the system by avoiding repetitive proceedings and preventing inconsistent adjudications.

## II.   The Proposed Settlement is Fair, Reasonable, and Adequate.

Rule 23(e) requires court approval for a class action settlement to ensure that it is procedurally and substantively fair, reasonable, and adequate.  Fed. R. Civ. P. 23(e).  To determine procedural fairness, courts examine "the negotiating process leading to settlement." *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 116 (2d Cir. 2005); *D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001) (same).  To determine substantive fairness, courts evaluate whether the settlement's terms are fair, adequate, and reasonable according to the factors set forth in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974), *abrogated on other grounds by Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000).

Courts examine procedural and substantive fairness in light of the "strong judicial policy in favor of settlements, particularly in the class action context." *Wal-Mart Stores*, 396 F.3d at 116 (internal quotation omitted); *see also Spann v. AOL Time Warner Inc.*, No. 02 Civ. 8238, 2005 WL 1330937, at *6 (S.D.N.Y. June 7, 2005) (same).

### A.   The Proposed Settlement is Procedurally Fair.

The proposed settlement is procedurally fair because it was reached as a result of vigorous, arm's-length negotiations and mediation conducted by Hunter R. Hughes, a well-

14

respected employment and class action law mediator, with significant experience mediating disputes involving challenges to criminal history hiring practices.  Miazad Decl. ¶ 17.

Before their mediation, the Parties entered into a confidentiality agreement and exchanged information relevant to Plaintiff's claims—including client files and information relating to the size and ascertainability of the putative Class.  *Id.* ¶ 14.  Defendant provided a rolling production of policy documents pertaining to Defendant's background check hiring process, a list of applicable individuals denied employment, and Plaintiff's personnel file (including e-mails), among other relevant documents.  *Id.*  Plaintiff's Counsel reviewed these documents, in consultation with Plaintiff.  *Id.*  As part of Plaintiff's fact-finding process, on January 24, 2018, the Parties conducted a comprehensive in-person conference in New York to discuss Defendant's background check process and contextualize the documents they had produced.  *Id.* ¶ 15; ECF No. 23.  At the in-person conference, the Parties also agreed to schedule a mediation and to exchange additional informal discovery in advance of mediation.  Miazad Decl. ¶ 15.  In between the January 24, 2018 conference, and the mediation, the Parties continued to exchange information to further their evaluations of settlement positions and the merits of the case through multiple telephone conferences and e-mail correspondence.  *Id.* ¶ 16.[7] Plaintiff then conducted a preliminary damages analysis for purposes of settlement negotiations. *Id.*

---

[7]     Earlier, on June 15, 2017, Plaintiff Felipe Kelly filed a Charge of Discrimination ("Charge") with the U.S. Equal Employment Opportunity Commission ("EEOC") based on Defendant's denial of employment.  Miazad Decl. ¶ 13.  Levy states it did not receive and therefore did not respond to the Charge, and on February 26, 2018, the EEOC issued an adverse finding.  *Id.*  As part of an evaluation of Defendant's background check policies and practices, Plaintiff requested and reviewed the EEOC file.  *Id.*

On April 23, 2018, the Parties participated in a full day of mediation in New York, New York with Hunter R. Hughes. *Id.* ¶ 17. After concluding a full day of arm's-length negotiations, the Parties reached an agreement in principle as to the structure of the settlement. *Id.* ¶ 18. Over the next approximately three months, the Parties extensively negotiated a detailed Memorandum of Understanding ("MOU"). *Id.* ¶ 19; *see* ECF Nos. 24-25. As part of these negotiations, the Parties engaged in a number of telephonic conferences and vetted multiple proposed IOs, ultimately agreeing to Dr. Toni Locklear, an IO with 25 years of experience that includes evaluating employer background check processes. Miazad Decl. ¶ 20. The Parties involved Dr. Locklear to help craft the injunctive relief presented in the MOU, and resolve disputes as to language in the MOU. *Id.* ¶ 20. Following the execution of the MOU on July 20, 2018, the Parties spent the following month negotiating the Settlement Agreement and finalizing the notice and claims process. *Id.* ¶ 21; Ex. A (Settlement Agreement). On or about August 21, 2018, the Parties executed the Settlement Agreement. *See id.*

This process afforded the Parties' experienced counsel a strong basis to evaluate the merits of the claims. *See Toure v. Amerigroup Corp.*, No. 10 Civ. 5391, 2012 WL 3240461, at *3 (E.D.N.Y. Aug. 6, 2012) (finding settlement to be "procedurally fair, reasonable, adequate, and not a product of collusion" after plaintiffs engaged in significant discovery and enlisted the services of an experienced employment law mediator); *Flores v. Anjost Corp.*, No. 11 Civ. 1531, 2014 WL 321831, at *4 (S.D.N.Y. Jan. 29, 2014) (same). A "presumption of fairness, adequacy and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery." *Wal-Mart Stores*, 396 F.3d at 116 (quotation omitted); *see also D'Amato*, 236 F.3d at 85. "Absent fraud or collusion, [courts] should be hesitant to substitute [their] judgment for that of the parties who negotiated the

16

settlement." *In re EVCI Career Colls. Holding Corp. Sec. Litig.*, No. 05 Civ. 10240, 2007 WL 2230177, at *4 (S.D.N.Y. July 27, 2007).

Further, since preliminary approval, Dr. Locklear has overseen Levy's implementation of her recommendations to perform a thorough internal study and has apprised Class Counsel of the process. These efforts reinforce Class Counsel's view that this settlement is fair and the programmatic relief provides a real and substantial benefit.

**B.      The Proposed Settlement Is Substantively Fair.**

In *Grinnell*, the Second Circuit provided the analytical framework for evaluating the substantive fairness of a class action settlement. 495 F.2d at 463. The *Grinnell* factors guide district courts in making this determination. Here, all of the *Grinnell* factors weigh in favor of final approval of the settlement.

**1.    Litigation Through Trial Would Be Complex, Costly, and Long (*Grinnell* Factor 1).**

By reaching a favorable settlement early, before certification and dispositive motions, trial, or appeals, Plaintiff avoids significant expense and delay and ensures timely individual and programmatic relief for the class. "Most class actions are inherently complex and settlement avoids the costs, delays and multitude of other problems associated with them." *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 174 (S.D.N.Y. 2000), *aff'd sub. nom. D'Amato v. Deutsche Bank*, 236 F.3d 78 (2d Cir. 2001). This case involves 101 class members raising claims under federal and New York law, implicating a complicated interplay of multiple laws governing how an employer evaluates the criminal history of job applicants. Miazad Decl. ¶ 29. This case also was one of the first (if not the first) class actions raising allegations under New York City's Fair Chance Act, and thus required additional care to research, draft the

complaint, and craft a litigation and settlement strategy, and poses additional risk to litigate. *Id.* ¶ 30.

Should the case go forward, Plaintiff would likely face a motion to dismiss, and if his claims survived, extensive discovery disputes, strong opposition to class certification, *Daubert* challenges to Plaintiff's experts, and a motion for summary judgment after a lengthy discovery process. *Id.* ¶ 31.[8] If Plaintiff were able to certify the class and overcome a summary judgment motion, a trial on the merits would have involved significant risk as to both liability and damages. *Id.* ¶ 33. While Plaintiff believes he could ultimately defeat Defendant's defenses and establish liability, this would require significant factual development and favorable outcomes at trial, and on appeal, all of which are inherently uncertain and lengthy. *Id.* ¶ 34. This settlement, on the other hand, provides significant relief to Class Members in a prompt and efficient manner. Therefore, the first *Grinnell* factor weighs in favor of final approval.

### 2. The Reaction of the Class Has Been Positive (*Grinnell* Factor 2).

The absence of objections by class members is significant in determining whether the proposed class settlement is reasonable to the class as a whole. *See Slomovics v. All for a Dollar, Inc.*, 906 F. Supp. 146, 150 (E.D.N.Y. 1995) ("The absence of [class member] objections carries considerable weight in the determination of fairness."). No Class Member has objected to the settlement and only one, because of a prior settlement, requested exclusion. This is strong evidence of fairness. *See, e.g., capadi v. Int'l Creative Mgmt. Partners, LLC*, No. 14 Civ. 4382, 2015 WL 4210906, at *2 (S.D.N.Y. July 9, 2015) (noting that "reaction to the settlement was

---

[8] For example, Class Counsel's background check discrimination case against the U.S. Census Department, which spanned over six years and at least 28 conferences involving the Court, also involved three separate motions to dismiss in addition to the defendants' opposition to class certification and *Daubert* challenges to their expert witnesses. Miazad Decl. ¶ 32.

positive [because] [n]o Class Member objected to the Settlement Stipulation, and only 24

Exclusion Forms were timely submitted"); *Lizondro-Garcia v. Kefi LLC*, No. 12 Civ. 1906, 2014

WL 4996248, at *4 (S.D.N.Y. Oct. 7, 2014) (finding class's reaction to settlement to be

"extremely positive" when no class member objected and only one opted out and collecting

cases); *Morris v. Affinity Health Plan, Inc.*, 859 F. Supp. 2d 611, 619 (S.D.N.Y. 2012) (where 16

out of 1,500 class members excluded themselves and only one objected, the "response

demonstrates strong support for the settlement").

In addition, Class Members' participation rate supports final approval of the settlement.

Here, approximately 50.7% of Class Members have submitted Claim Forms.  *See* Ex. B (Salhab

Decl.) ¶ 14.  In Class Counsel's experience, this is an excellent participation rate.  Miazad Decl.

¶ 27.  Further, this rate well exceeds the claims rate approved by other courts across the country

in FCRA settlements.  *Id.*; *see Rhom v. Thumbtack, Inc.*, No. 16 Civ. 2008, 2017 WL 4642409, at

*6 (N.D. Cal. Oct. 17, 2017) (3.5% claims rate, one objection, and one request for exclusion);

*Watkins v. Hireright, Inc.*, No. 13 Civ. 1432, 2016 WL 5719812, at *3 (S.D. Cal. Sept. 30, 2016)

(5.9% claims rate and several objectors).[9]

### 3. Discovery Has Advanced Far Enough to Allow the Parties to Resolve the Case Responsibly (*Grinnell* Factor 3).

The Parties have completed enough discovery to recommend settlement.  The proper

question is 'whether counsel had an adequate appreciation of the merits of the case before

negotiating'" *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 537 (3d Cir. 2004) (quoting

*In re Cendant Corp. Litig.*, 264 F.3d 201, 235 (3d Cir. 2001) and analyzing factor analogous to

third *Grinnell* factor in Third Circuit); *see also Karic v. Major Auto. Cos.*, *Inc.*, No. 09 Civ.

---

[9]     While the instant settlement involves other claims in addition FCRA claims, Plaintiff respectfully posits that the citation to these FCRA settlements still provide an illustrative comparison.

5708, 2016 WL 1745037, at *6 (E.D.N.Y. Apr. 27, 2016).  "'[T]he pretrial negotiations and discovery must be sufficiently adversarial that they are not designed to justify a settlement;'" rather, they must be "'an aggressive effort to ferret out facts helpful to the prosecution of the suit.'"  *In re Austrian*, 80 F. Supp. 2d at 176 (quoting *Martens v. Smith Barney, Inc.*, 181 F.R.D. 243, 263 (S.D.N.Y. 1998)).

Here, the Parties' discovery meets this standard.  The Parties engaged in significant investigation before entering into negotiations and in preparing for mediation.  Miazad Decl. ¶ 14.  Defendant provided Plaintiff information relevant to Plaintiff's claims including Levy's criminal history screening policy, sample Fair Chance Act Notices, and information relating to the size and ascertainability of the putative Class.  *Id.*  The Parties also had multiple telephone conferences, and an in-person meeting, to analyze and discuss the information produced by Defendant, and its potential impact on the claims at issue.  *Id.* ¶ 15.  Class Counsel conducted their own independent investigation, working with Plaintiff to analyze the hiring process.  *Id.* ¶ 16.  The Parties attended a full day of mediation.  *Id.* ¶ 17.  The Parties engaged in multiple telephone conferences following mediation regarding their positions and consulted with an IO to craft injunctive relief language.  *Id.* ¶ 20.  Further, the Parties have continued to consult extensively with Dr. Locklear over the contours of programmatic relief.  *Id.* ¶¶ 20, 22-25.

Accordingly, the third *Grinnell* factor favors final approval.  *See, e.g.*, *Katz v. ABP Corp.*, No. 12 Civ. 4173, 2014 WL 4966052, at *1, *9 (E.D.N.Y. Oct. 3, 2014) (granting preliminary approval of FCRA settlement based on pre-mediation discovery and arm's-length negotiations); *see also Ballinger v. Advance Magazine Publishers, Inc.*, No. 13 Civ. 4036, 2014 WL 7495092, at *2 (S.D.N.Y. Dec. 29, 2014); *Morris*, 859 F. Supp. 2d at 620 (collecting cases).

4. **The Risk of Establishing Liability and Damages for the Class Through Trial Favors Approval (*Grinnell* Factors 4 and 5).**

Although Plaintiff believes his claims are meritorious, he also recognizes the significant legal and procedural obstacles he would face in establishing liability and recovering damages. Indeed, "[i]f settlement has any purpose at all, it is to avoid a trial on the merits because of the uncertainty of the outcome." *In re Ira Haupt & Co.*, 304 F. Supp. 917, 934 (S.D.N.Y. 1969).

Class actions under the NYCHRL, FCRA, and NY FCRA are subject to considerable risk. Miazad Decl. ¶ 35. This is especially true here, where Plaintiff's legal theory is relatively untested. *Id.* Additionally, establishing damages for a class of over one hundred class members is not without challenges. Defendant likely would argue that questions concerning individual employment decisions and entitlement to damages would overwhelm the litigation. If the Court agreed, even if Plaintiff prevailed on the merits, eligibility for back pay for over one hundred class members would likely have to be determined through some form of individualized hearings. *See Int'l Brotherhood of Teamsters v. United States*, 431 U.S. 324, 361, 371-76 (1977).

In contrast to these known risks, the settlement ensures that Levy at the Barclays Center will offer employment and compensation to qualified Class Members and that its employment process will be subject to oversight by an independent expert. These circumstances favor final approval.

5. **The Risk of Obtaining Class Certification Favors Approval (*Grinnell* Factor 6).**

The risk of obtaining class certification and maintaining it through trial also is present. The Court has not yet certified the class and such a determination would likely be reached only after extensive briefing. Defendant may argue that individual questions preclude class certification, including whether the relevant policies and procedures were consistently applied.

Although background check cases are certified, there is nonetheless a legitimate risk that the

Court would conclude that individualized factual inquiries would preclude class treatment.  *See,*

*e.g.*, *Delmoral v. Credit Prot. Ass'n, LP*, No. 13 Civ. 242, 2015 WL 5793311, at *6 (E.D.N.Y.

Sept. 30, 2015) (denying class certification in FDCPA case where "each proposed class

member's claim would require an individualized determination of exactly when he or she

received the" relevant communications).  Should the Court certify the class, Defendant would

likely later challenge that determination and move to decertify, requiring another round of

briefing.  Defendant might also seek permission to file an interlocutory appeal under Rule 23(f).

*See, e.g.*, *Shahriar v. Smith & Wollensky Rest. Grp., Inc.*, 659 F.3d 234 (2d Cir. 2011).  Risk,

expense, and delay permeate such a process.  Settlement eliminates this risk, expense, and delay.

Accordingly, this factor favors final approval.

### 6. **Defendant's Ability to Withstand a Greater Judgment Is Not Determinative (*Grinnell* Factor 7).**

A "defendant['s] ability to withstand a greater judgment, standing alone, does not suggest

that the settlement is unfair."  *In re Austrian*, 80 F. Supp. 2d at 178 n.9.  Here, the settlement

eliminates the risk of collection by requiring Defendant to pay the total amount owed to Class

Members within 14 days of the Effective Date.  *See* Ex. A (Settlement) § 3.1(A).  As such, this

factor is not determinative and has no bearing on the settlement's fairness.

### 7. **The Settlement Is Substantial, Even in Light of the Best Possible Recovery and the Risks of Litigation (*Grinnell* Factors 8 and 9).**

The relief provided in the settlement is comprehensive and targeted to the harm addressed

in this litigation.  In particular, it provides a process for reviewing Levy's hiring policies at the

Barclays Center and it affords Class Members opportunities to obtain valuable employment

opportunities and/or compensation.  Eligible Class Members are entitled to a job opportunity and

monetary compensation of $1,950.00, or monetary compensation of $2,350.00, depending on

whether they qualify as Tier Two or Tier Three Class Members.  Considering that the jobs at issue are largely seasonal, event-driven and minimum wage, this amount represents a reasonable percentage of the average salary for the positions to which class members could have been hired.[10]  For Tier One Class Members, who are not eligible for employment with Levy at Barclays, a recovery of $250.00 is an excellent class recovery to account for nominal damages under the FCA and statutory damages under the FCRA.  In fact, such a recovery well exceeds what Courts have found to be a reasonable recovery in other notice claims, including with FCRA settlements.  *See, e.g.*, *Domonoske v. Bank of Am., N.A.*, 790 F. Supp. 2d 466, 470 (W.D. Va. 2011) (approving proportional payments "up to $100, but no less than $2").[11]

When, as here, settlement ensures immediate relief to class members tailored to the alleged harms, "even if it means sacrificing 'speculative payment of a hypothetically larger amount years down the road,'" the settlement should be found reasonable.  *See Gilliam v. Addicts Rehab. Ctr. Fund*, No. 05 Civ. 3452, 2008 WL 782596, at *5 (S.D.N.Y. Mar. 24, 2008) (quoting *Teachers' Ret. Sys. of La. v. A.C.L.N., Ltd.*, No. 01 Civ. 11814, 2004 WL 1087261, at *5 (S.D.N.Y. May 14, 2004)).  In sum, the terms of the Settlement Agreement are fair and reasonable, as evidenced by application of the relevant *Grinnell* factors.

---

[10]     Based on information disclosed by Defendant, the average salary for the seasonal work at issue in this case would have ranged from approximately $9,000-$10,000.  Miazad Decl. ¶ 36.

[11]     *See also Watkins v. Hireright, Inc.*, No. 13 Civ. 1432, 2016 WL 1732652, at *2, *7 (S.D. Cal. May 2, 2016) (preliminarily approving settlement where cap to recovery was $200, but parties estimated each class member would receive approximately $58); *Manuel v. Wells Fargo Bank, Nat'l Ass'n*, No. 14 Civ. 238, 2016 WL 1070819, at *2 (E.D. Va. Mar. 15, 2016) (finally approving settlement where class members would receive either $35 or $75 dollars); *Syed v. M-I LLC*, No. 14 Civ. 742, 2016 WL 310135, at *2, *8 (E.D. Cal. Jan. 26, 2016) (finally approving settlement where class members would receive approximately $16).

## <u>CONCLUSION</u>

For these reasons, Plaintiff respectfully asks that the Court approve the settlement, certify

the Settlement Class, and enter an Order granting Plaintiff's Motion.[12]

Dated:  August 23, 2019
        New York, New York

                                    Respectfully submitted,

                                    */s/ Ossai Miazad*
                                    **OUTTEN & GOLDEN LLP**
                                    Ossai Miazad
                                    Christopher M. McNerney
                                    Nina T. Martinez
                                    685 Third Avenue, 25th Floor
                                    New York, New York 10017
                                    Telephone: (212) 245-1000

                                    **YOUTH REPRESENT**
                                    Michael C. Pope
                                    Eric Eingold
                                    11 Park Place, Suite 1512
                                    New York, New York 10007
                                    Telephone: (646) 759-8080

                                    ***Attorneys for Plaintiff and the
                                    Settlement Class***

---

[12]     For the Court's convenience, a Proposed Order Granting Plaintiff's Unopposed Motion
for Certification of the Settlement Class and Final Approval of Class Action Settlement is
attached as Exhibit G to the Miazad Declaration.

## <u>CERTIFICATION OF SERVICE</u>

I hereby certify that on **August 23, 2019**, a copy of the foregoing document was filed electronically and service made by certified mail to anyone unable to accept electronic filing. Notice of this filing will be sent by email to all parties by operation of the Court's electronic filing system or by certified mail for anyone unable to accept electronic filing. Parties may access this filing through the Court's system.

*/s/ Ossai Miazad*
Ossai Miazad
